

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TYRONE HENDERSON,
on behalf of himself and others
similarly situated,

          **Plaintiff,**

v.                                    Civil Action No: 3:12cV097

CORELOGIC, INC.,

**and**

CORELOGIC NATIONAL BACKGROUND DATA, LLC,
f/k/a National Background Data, LLC,

          **Defendants.**

## CLASS COMPLAINT

COMES NOW, the Plaintiff, **TYRONE HENDERSON**, on behalf of himself and all similarly situated individuals and for his Class Complaint, he states as follows:

## INTRODUCTION

1.     Tyrone Henderson (hereinafter "Plaintiff") brings this class action against Defendants to obtain relief for himself and the class he proposes to represent for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*

2.     Defendants operate as a unified consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. Defendants maintain an extensive database of public records regarding consumers. They then sell consumer reports generated from the database furnish these consumer reports to other reseller consumer reporting agencies who

rebrand them and sell them to the potential employers for the Plaintiff and the putative class members. Defendant and the reseller never reveal to the consumer from where this original report was generated and sold.

3.     Plaintiff alleges an individual claim under 15 U.S.C. § 1681e(b), which required that Defendant use "reasonable procedures to assure maximum possible accuracy" in the publication of Mr. Henderson's consumer report.  Plaintiff had received a tentative job offer conditioned upon his employment background check.  The background check that Defendants then sold to the employer was grossly inaccurate – most significantly because it reported that the Plaintiff had been convicted of a felony in Westmoreland County, Pennsylvania. Defendants had mixed the criminal history of a stranger with the same first and last name into the Plaintiff's report, even though that person shared nothing else in common.  The Plaintiff did not then get the job.

4.     Plaintiff also alleges a class claim under 15 U.S.C. § 1681k because Defendants did not provide Plaintiff and other similarly situated consumers timely and lawful notice that it was furnishing an employment purposed consumer report at the time it did so.  This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the reporting agency to obtain and as appropriate correct information in the furnished report.  It also was intended to alert the consumer to the employer's use of the report to provide them the opportunity to address any concerns or derogatory history in the report directly with the employer.  Defendants' failure to comply with these long standing requirements denied the Plaintiff and each putative class member these important rights.

2

5.      Finally, Plaintiff brings a class claim under 15 U.S.C. § 1681g.  The Plaintiff requested his consumer disclosure from the Defendants and a list of all inquiries made to the Defendants for his report.  The Defendants do not reveal the inquiries for reports they sell to third party reseller agencies.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly do business in the district and division.

7.      The Plaintiff is a citizen of Richmond, Virginia and maintains all of the documents relevant to this dispute at his home in Richmond, Virginia.

## PARTIES

8.      Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA.

9.      Defendant CoreLogic, Inc. is the parent company of CoreLogic National Background Data, LLC ("NBD").  It holds itself out and describes its business as "a leading provider of consumer, financial and property information, analytics and services[.] … CoreLogic has built the largest U.S. real estate, mortgage application, fraud, and loan performance databases and is a recognized leading provider of mortgage and automotive credit reporting, property tax, valuation, flood determination, and geospatial analytics and services. More than one million users rely on CoreLogic to assess risk, support underwriting, investment and marketing decisions, prevent fraud, and improve business performance in their daily operations[.]"

3

10.    According to Defendants, "National Background Data by CoreLogic is the leading wholesale criminal data provider to the background screening industry. National Background Data is part of CoreLogic. CoreLogic brings you powerful new capabilities to assess risk from every angle - and realize dynamic insights you need to optimize business performance."

11.    According to Defendants, "Hundreds of screening companies count on [CoreLogic and NBD] for unmatched quality data and superior service to drive risk down and income up. With the largest privately held criminal records database, we provide efficient and economical access to multi-jurisdictional data. ... Whether the goal is to provide an employment screening package or to screen volunteers, we partner with our clients to provide a high quality, low cost solution tailored to meet the needs of the end client."

12.    CoreLogic and NBD sell criminal and employment-purposed background checks solely on a wholesale basis. Consumers do not typically even know that an employment report originated from Defendants. They "work in the background to deliver the industry-leading background information search solutions [the employer clients of reseller background check companies] want [.]" According to Defendants, their "business is built on two principles. First, to provide comprehensive background data and searches. Second, to join forces with background screening companies to enable them to provide optimum value to their clients while growing their own businesses." NBD sells "exclusively through a network of screening companies never direct to the client."

13.    According to Defendants, "National Background Data by CoreLogic is a consumer reporting agency that assembles and evaluates consumer information and provides

4

consumer reports to third parties for the purpose of residential screening, employment screening and/or other purposes as permitted under federal, state and local laws."

14.     CoreLogic is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

15.     NBD is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties. CoreLogic controls the acts and practices of itself and of NBD.

16.     Defendants disburse consumer reports to third parties under contract for monetary compensation during the class period and currently.

17.     Defendants treat and operate NBD as a fully integrated division of CoreLogic and not as a separate or independent business entity.

18.     CoreLogic and NBD operate as a nationwide consumer reporting agency as governed by the FCRA.

19.     Defendants permit the flow and exchange of consumer data from the various consumer reporting databases controlled, operated, maintained or owned by CoreLogic and its various subsidiaries as if such exchanges were other than the furnishing of a consumer report to a third party.  That is, Defendants exchange otherwise private and protected consumer data between one another because they operate as an indivisible and single consumer reporting agency.

20.     Third party Verifications, Inc. ("Verifications") also operates as a "consumer

5

reporting agency" as defined and governed by the FCRA.  For purposes of this action, it operates as a "reseller" of consumer report data.

## FACTUAL ALLEGATIONS

21.     In or around the months of August and September 2009, Plaintiff applied for a job with Interstate Brands Corporation, subject to a background check being conducted.

22.     On or about November 5, 2009, Interstate Brands Corporation requested a background check from Verifications.

23.     Immediately thereafter and in accordance with Defendants' standard procedures, Verifications ordered a report from Defendants, which they furnished. (Hereafter, the "CoreLogic report")

24.     The CoreLogic report was a "consumer report" governed and as defined by the FCRA.

25.     Plaintiff did not learn that Defendants had furnished a report regarding him until late 2011, while litigating a collateral case against Verifications.

26.     Defendants returned several "hits" attributed to the Plaintiff, including purported criminal conviction public records from Westmoreland Count, Pennsylvania.

27.     The Westmoreland records did not belong to the Plaintiff.  They regarded an unrelated man with a similar name, but entirely different social security number.

28.     As soon as Verifications received the CoreLogic report, it placed same within an online consumer report regarding the Plaintiff provided to the Plaintiff's prospective employer. While this report did not contain the details of the Pennsylvania convictions, it did report that the Plaintiff's history had come back with these "Hits" in a search of his national criminal

background. This report was furnished immediately to the employer who by contract had access to (and did review) this report even before Defendants had completed additional processes to obtain confirming data from another source.

29.     Defendants' failure to follow reasonable procedures to assure that their report regarding the Plaintiff did not include information regarding a different person was a substantial factor in the rejection of Plaintiff's employment application and other related actual harm he suffered.   As a result of the consumer report, Interstate Brands Corporation withdrew its conditional offer of employment.

30.     Later, after losing the Interstate Brands Corporation job, the Plaintiff was able to obtain – just by asking the court clerk directly – a copy of the actual Westmoreland County criminal records.

31.     The Pennsylvania records from the Court itself confirm that they do not belong to the Plaintiff and do not match his social security number.

32.     In creating and furnishing the Plaintiff's consumer report, Defendants failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. For example, they allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Plaintiff's consumer report.

33.     Plaintiff never received a letter or any other communication from CoreLogic, NBD or any other CoreLogic entity "at the time" the CoreLogic report was furnished.

34.     Plaintiff also never received a letter or any other communication from Verifications "at the time" a report was then furnished to Interstate Brands Corporation.

35.     In 2011, after learning of the possible involvement of Defendants in the Verifications report, Plaintiff wrote to Defendants and requested a full copy of his file, including all inquiries made to them and he disputed the inaccurate Westmoreland County records.

36.     Defendants responded to Plaintiff's dispute and for their results of the investigation they claimed to have removed the inaccurate items.

37.     In Defendants' response and notice to the Plaintiff after his request for his full file, Defendant NBD did not respond or provide any response.

38.     In Defendants' response and notice to the Plaintiff after his request for his full file, Defendants did not identify any of the inquiries made or reports furnished, including the Verifications report.

39.     In fact, after the events alleged herein, the records in Pennsylvania clearly showed that the social security number in the public records did not match that of the Plaintiff.  Had Defendants actually contacted the governmental source, it would have seen this obvious discrepancy.

40.     Despite providing a report for employment purposes containing public record information likely to have an adverse affect upon their ability to obtain or maintain employment, Defendants failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person(s) to whom such information was being reported.

41.     On information and belief, Plaintiff alleges that Defendants did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information

(e.g. the Court clerk) immediately before furnishing a report which includes such information. Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

42.     Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

43.     Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

44.     Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff and other members of the class of their rights under the FCRA.

45.     Plaintiff alleges that Defendants' conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

### CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE FCRA § 1681k(a)(1)
### (CLASS ACTION)

46.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "1681k Class") initially defined as follows:

> i.  All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a report sold to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment

9

> obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d.) within five years next preceding the filing of this action and during its pendency, and (e.) to whom Defendants did not place in the United States mail postage pre-paid, on the day they furnished any part of the report, a written notice that they were furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

48.     Plaintiff also proposes an alternate subclass limited to reports sold to Verifications, Inc.   Plaintiff proposes:

> **1681k Verification subclass** defined as:
>
> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a report sold to *Verifications*, (b.) that was furnished for an employment purpose, (c.) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d.) within five years next preceding the filing of this action and during its pendency, and (e.) to whom Defendants did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

49.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable

through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

50.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. Without limitation, the total focus of the litigation will be Defendants' uniform conduct and procedures, whether Defendants sent the required notices, when they did so and whether Defendants acted willfully in their failure to design and implement procedures to assure compliant delivery and/or timing of these notices. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

51.     **Typicality. FED. R. CIV. P. 23(a)(3)).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff seeks only statutory and punitive damages. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

52.     **Adequacy.** Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. FED. R. CIV. P. 23(a(4). Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

53.     **Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

54. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

55. Defendants' failure to timely provide the required FCRA notices to the Plaintiff and other members of the putative class violated 15 U.S.C. § 1681k(a)(1).

56. The conduct, action, and inaction of Defendants was willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

57. Plaintiff and other members of the putative class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58. As a result of these FCRA violations, Defendants are liable to Plaintiff and to

each Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C.

§1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys

fees and costs pursuant to § 1681n.

## COUNT II - VIOLATION OF THE FCRA § 1681g(a)
## (CLASS ACTION)

59.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set

forth at length herein.

60.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this

action for himself and on behalf of a class (the "1681g Class") initially defined as follows:

> All natural persons residing in the United States (including
> all territories and other political subdivisions of the United
> States) (a.) who requested their consumer file from
> CoreLogic, NDB or any other CoreLogic entity, (b.) within
> five years next preceding the filing of this action and during
> its pendency, and (c.) about whom a NBD report had been
> furnished to a third party reseller (1.) for employment
> purposes, during the 2-year period preceding the date on
> which the consumer's request for the report made, or (2.) for
> any other purpose, during the 1-year period preceding the
> date on which the request was made.    Excluded from the
> class definition are any employees, officers, directors of
> Defendants, any attorney appearing in this case, and any
> judge assigned to hear this action.

61.    **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that

joinder of all is impractical. The names and addresses of the Class members are identifiable

through documents maintained by the Defendants, and the Class members may be notified of the

pendency of this action by published and/or mailed notice.

62.    **Existence and Predominance of Common Questions of Law and Fact. FED.**

**R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class.

Without limitation, the total focus of the litigation will be Defendants' uniform conduct and procedures, whether Defendants disclosed the NBD inquiries in their consumer disclosures, whether they were required to do so, and whether Defendants acted willfully in their failure to design and implement procedures to assure compliant delivery and/or timing of this information. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. §1681n is a common question.

63.     **Typicality.** FED. R. CIV. P. 23(a)(3)).  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff seeks only statutory and punitive damages.  In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

64.     **Adequacy.**  Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  FED. R. CIV. P. 23(a(4).  Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

65.     **Superiority.**   Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  FED. R. CIV. P. 23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on

14

the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

66. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

67. Defendants' failure to disclose the NBD inquiries and reports furnished to resellers violated 15 U.S.C. § 1681g(a)(3) as to the Plaintiff and other members of the Section 1681g class.

68. The conduct, action, and inaction of Defendants was willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

69. Plaintiff and other members of the putative class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

70. As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Section 1681g Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for

attorneys fees and costs pursuant to § 1681n.

## COUNT III - FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## (INDIVIDUAL CLAIM)

71.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

72.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding the Plaintiff.

73.     As a result of this conduct by the Defendants the Plaintiff suffered actual damages, including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

74.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

75.     The Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

a.      That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Classes;

b.      That judgment be entered for Plaintiff individually against Defendants for actual and/or statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o;

c.      That judgment be entered for the class against Defendants for statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681k(a) and 1681g(a) pursuant to 15 U.S.C. § 1681n. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

d.      That the Court grant such other and further relief as may be just and proper.

TRIAL BY JURY IS DEMANDED.

**TYRONE HENDERSON,**
**For himself and on behalf of all**
**similarly situated individuals.**


By: _____
Susan M. Rotkis
VSB 40693
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  srotkis@clalegal.com

Leonard A. Bennett
VSB #37523
Attorney for Plaintiff
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com

Dale W. Pittman
VSB #15673
Attorney for Plaintiff
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb Street
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com