# 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

## AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS



1. RELATION TO OTHER SECTIONS

A CRA that is a "reseller" has somewhat different duties from other CRAs in some situations. Section 605A(f) requires resellers of consumer reports with any alerts in the file to include them in resold reports. Section 605B(d) provides different blocking obligations for resellers than other CRAs. Section 611(f) provides different investigation duties for resellers than other CRAs.

**Section 603(v)** defines "Commission" as the Federal Trade Commission.

**Section 603(w)** defines "Bureau" as the Bureau of Consumer Financial Protection.

**Section 603(x)** defines "nationwide specialty consumer reporting agency" as a CRA "that compiles and maintains files on consumers on a nationwide basis relating to (1) medical records or payments; 2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims."[90]

1. RELATION TO OTHER SECTIONS

Section 612(a) imposes "free annual disclosure" duties on nationwide specialty CRAs. Comment 612(a)-2 discusses how those duties differ from those imposed on CRAs described in Section 603(p), which defines "nationwide consumer reporting agency" to include different types of CRAs from those defined under this section.

**Section 603(y)(1)** excludes from the definition of "consumer report" those reports made solely for the purpose of investigating (1) suspected employment misconduct or (2) compliance with applicable laws or rules or "any pre-existing written policies of the employer." **Section 603(y)(2)** requires that an employer that has taken adverse action based on such a report provide the employee a summary of the "nature and substance" of the information.

1. PRE-EXISTING WRITTEN POLICIES

The term "pre-existing written policies of the employer" means reasonable rules relating to the job. A report qualifies under this section only if it bears on compliance with the policy.

2. "NATURE AND SUBSTANCE"

The adverse action disclosure of a summary of the "nature and substance" of the communication need not name information sources.

## Section 604 – Permissible Purposes of Reports 15 USC 1681b

**Section 604(a)** says that "any consumer reporting agency may furnish a consumer report under the following circumstances and no other ...." Its subsections enumerate specific permissible purposes.

1. RELATION TO SECTION 603(d) (DEFINITION OF "CONSUMER REPORT")

Sections 603(d)(1) and 604(a)(3) must be construed together to determine what are "permissible purposes," because section 603(d)(1) refers to any "purpose authorized under section 604" (often

described as "permissible purposes" of consumer reports). In addition, some permissible purposes are enumerated in section 603(d)(1)(A) and 603(d)(1)(B).[91]

2. RELATION TO OTHER SECTIONS

A. CRA procedures. Section 607(a) requires CRAs to safeguard consumer report information by furnishing consumer reports only for permissible purposes, and to follow specified, reasonable procedures to achieve this end.[92]

B. Improper procurement of consumer reports. Section 604(f) prohibits the use or procurement of a consumer report without a permissible purpose. Section 619 provides criminal sanctions against any person who knowingly and willfully obtains information on a consumer from a CRA under false pretenses.[93]

C. Government agencies. Section 608 allows CRAs to provide government agencies specified identifying information concerning consumers, notwithstanding the limitations of section 604.[94] Section 626 requires CRAs to provide consumer reports or specific information in their files to the Federal Bureau of Investigation in connection with investigations relating to international terrorism or clandestine intelligence activities. Section 627 allows CRAs to provide all information in their files to government agencies conducting such investigations.

D. Prescreening. Section 604(c) allows CRAs to provide creditors and insurers with limited information in the context of prescreening services.

3. FURNISHING OF CONSUMER REPORTS TO OTHER CRAS

A CRA may furnish a consumer report to another CRA, so that the second CRA can sell such reports to subscribers with a permissible purpose. In these circumstances, the receiving CRA must carry out the responsibilities of companies that procure reports for resale, as set forth in section 607(e). If the CRA meets the definition of "reseller," it must also comply with provisions imposed on "resellers." See comment 603(u)-1.[95] The CRA that distributes consumer reports to other CRAs also must comply with FCRA requirements to implement reasonable policies and procedures to limit the distribution of consumer reports to those with permissible purposes. Among other things, such policies and procedures could include internal programs such that each intermediary relied upon by a CRA for distribution of consumer reports is audited and monitored on a regular and periodic basis.

4. REPORT FOR PERMISSIBLE PURPOSE AUTHORIZED, NOT REQUIRED

Even if a business has a permissible purpose to receive a consumer report, a CRA is not required to supply a report to such business because the statute is permissive, not mandatory.[96]

5. AGENTS

A. General. An agent of a party with a "permissible purpose" may obtain a consumer report where he is acting on behalf of his principal for that purpose.[97]

B. Real estate agent. A real estate agent may obtain a consumer report on behalf of a seller to evaluate the eligibility of a potential buyer who has offered to purchase the property.[98]

C. Private detective agency. A private detective agency may obtain a consumer report for its client while investigating a client's prospective employee. A private detective agency may obtain a consumer report as an agent for a creditor client attempting to collect an account owed. In these circumstances, the detective agency is acting on behalf of its client.[99]

D. Property manager. A landlord's representative investigating applicants for apartment rentals may obtain consumer reports on prospective tenants.[100]

E. Attorney. An attorney collecting a debt for a creditor client has a permissible purpose to obtain a consumer report on the debtor to the same extent as the client.[101]

6. PURPOSES NOT ALLOWED BY THE FCRA

A. General prohibition. Because this section allows a CRA to provide a consumer report for the listed purposes "and no other," it may not provide a report for any other purpose.

B. Marketing. Sellers of goods and services do not have a permissible purpose to obtain consumer reports for marketing purposes. But see sections 603(*l*) and 604(c), which allow CRAs to provide creditors and insurers limited information for firm offers of credit or insurance.

C. Curiosity. A CRA may not furnish a consumer report to satisfy a requester's curiosity. A news reporter does not have a permissible purpose to obtain a consumer report in preparing a newspaper or magazine article.[102]

D. Acceptance of free trial. A consumer's acceptance of a complimentary product or service, standing alone (i.e., with no indication of intent to purchase additional products or services on credit), is insufficient to provide a permissible purpose.[103]

E. Law enforcement. This section does not permit CRAs to furnish consumer reports for the purpose of locating a person suspected of committing a crime. But see section 608 (permitting the furnishing of specified, limited identifying information to governmental agencies) and sections 625-627 (requiring CRAs to provide consumer report data in cases involving counterintelligence and counterterrorism).[104] See comment 604(a)-2C.

7. CONSUMER'S PERMISSION NOT NEEDED WHERE OTHER PERMISSIBLE PURPOSE EXISTS

Generally, when permissible purposes other than employment exist, CRAs may furnish consumer reports without a consumer's specific permission or authorization. For example, where a consumer applies for credit (by phone, mail, in person, or electronically), the creditor has a permissible purpose to obtain a consumer report on the applicant. Similarly, consumer permission is not needed for entities to furnish information concerning their transactions with consumers to CRAs, or for CRAs to gather information.[105]

8. USER MAY DISCLOSE REPORT TO CONSUMER

The FCRA does not prohibit a consumer report user from providing a copy of the report, or otherwise disclosing it or any item or items of information in it (or any score based on the information), to the consumer who is the subject of the report.[106] See also section 607(c).

**Section 604(a)(1)** allows CRAs to furnish consumer reports in response to the "order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury."

1. SUBPOENA

A subpoena is not an "order of a court" unless it is signed by a judge. Thus, administrative subpoenas, attorney-issued subpoenas, and similar formal process issued by entities other than a federal grand jury, do not provide a permissible purpose under this section.[107]

2. INTERNAL REVENUE SERVICE SUMMONS

An Internal Revenue Service summons is an exception to the requirement that an order be signed by a judge before it constitutes an "order of a court" under this section, because another statute (26 U.S.C. §7609) specifically requires a CRA to furnish a consumer report in response to an IRS summons.[108] See comment 604(a)-1C, concerning specific provisions of the FCRA that allow or require CRAs to supply information to governmental entities.

**Section 604(a)(2)** allows CRAs to furnish consumer reports in accord "with the written instructions of the consumer to whom it relates."

1. CONSUMER INSTRUCTION

A consumer's written consent qualifies as an "instruction" that provides a permissible purpose under this section if it clearly authorizes the issuance of a consumer report on that consumer.[109] For example, a consumer's clear and specific written statement that "I authorize you to procure a consumer report on me" provides a permissible purpose under this section. However, the consumer's signature on a form that includes the statement "I understand that where appropriate, credit bureau reports may be obtained" is not a sufficiently specific instruction from the consumer to authorize a CRA to provide a consumer report. This language is more in the nature of a notification that a consumer report might be procured, as opposed to a grant of permission to obtain the consumer report.[110]

2. WRITTEN AUTHORIZATION

A consumer may transmit "written" authorization electronically or by facsimile, in addition to regular mail or in person.[111] The Electronic Signatures in Global and National Commerce Act ("ESIGN") (15 U.S.C. §§7001 *et seq.*, Public Law 106-229; June 30, 2000) provides that a consumer's consent is not invalid merely because it is communicated in electronic form. A consumer's "electronic signature" may be an acceptable method of providing "written instructions" under the FCRA. To be valid under the ESIGN Act, electronic authorization must be in a form that can be retained and retrieved in a perceivable form. Whether an e-mail, a mouse click "yes," or other electronic means clearly conveys the consumer's instructions depends on the specific facts.[112]

**Section 604(a)(3)(A)** allows a CRA to furnish consumer reports to a person which it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer"

1. REPORTS "IN CONNECTION WITH A CREDIT TRANSACTION INVOLVING THE CONSUMER"

A. Credit application. An application by a consumer for credit gives rise to a permissible purpose to obtain a consumer report, regardless of form. When a consumer applies for credit, whether in person, by phone, by mail, or by electronic means, the creditor has a permissible purpose to obtain a consumer report on the applicant, and thus does not need specific authorization from the applicant.[113]

B. Real estate transactions. A seller of property has a permissible purpose under this subsection to obtain a consumer report on a prospective purchaser to whom the seller has been requested

allowable charge for the following calendar year. As of January 1, 2011, the maximum allowable charge is $11.00.

## Section 613 – Public Record Information for Employment Purposes

15 USC 1681k

**Section 613(a)** provides that a CRA, when it compiles and provides public record information that is likely to have an adverse effect on a consumer's ability to obtain employment, shall either (1) notify the consumer at the time such information is provided to an employer or potential employer or (2) maintain strict procedures to insure that the information is complete and up to date. It further provides that "items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported." **Section 613(b)** provides an exemption to a federal agency or department when the head of the agency or department (or an appropriate delegate) makes certain written findings.

1. RELATION TO OTHER SECTIONS

   A CRA that furnishes public record information must also follow reasonable procedures to assure maximum possible accuracy of that information as required by section 607(b), even if it chooses to comply with this section by providing the subsection (a)(1) notice when providing public record information to employers.[263] An employer using the information must comply with the notice, consent, and disclosure provisions of section 604(b).[264]

2. GENERAL

   A CRA that furnishes public record information for employment purposes must comply with either subsection (a)(1) or (a)(2), but need not comply with both.[265] CRAs that provide reports for employment purposes must comply with this section, even if they are merely resellers of consumer reports obtained from other CRAs.[266] The procedures required by this section cannot be waived by the consumer to whom the report relates.[267]

3. METHOD OF PROVIDING NOTICE UNDER SUBSECTION (a)(1)

   A CRA may use first class mail or other reasonable means to notify consumers that it is providing public record information for employment purposes under subsection (a)(1).[268]

4. STRICT PROCEDURES UNDER SUBSECTION (a)(2)

   A. Stored public information. A CRA that furnishes consumer reports for employment purposes based on previously acquired public record information (purchased periodically from a third party) must verify that any such information is complete and up to date, in order to comply with subsection (a)(2).[269]

   B. Only reported "items" must be complete and up-to-date. This section requires that each "item of [public record] information" reported be complete and up to date. For example, if the CRA reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report. Similarly, if the CRA reports a conviction, it must

report a reversal that has occurred on appeal. In some cases, often at an employer's request, a report may deliberately omit data such as arrest or probation data. Although the report is not a "complete" reflection of every single piece of public record information, because the requirement to report complete and up-to-date information is item-specific, the CRA complies if its report includes the current, complete, and up-to-date public record status of each individual item reported.[270]

## Section 614 – Restrictions on Investigative Consumer Reports

**15 USC 1681l**

Section 614 provides, "Whenever a consumer reporting agency prepares an investigative consumer report, no adverse information in the consumer report (other than information which is a matter of public record) may be included in a subsequent consumer report unless such adverse information has been verified in the process of making such subsequent consumer report, or the adverse information was received within the three-month period preceding the date the subsequent report is furnished."

## Section 615 – Requirements on Users of Consumer Reports

**15 USC 1681m**

**Section 615(a)** provides that any party who "takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report" shall provide to the consumer orally, in writing, or electronically: notice of the adverse action; the name, address, and telephone number of the CRA (toll-free telephone number, in the case of a nationwide CRA); a statement that the CRA "did not make the decision to take the adverse action" and is unable to provide specific reasons for the action; and notice of the consumer's right to obtain a free file disclosure from the CRA, and to dispute with a CRA the accuracy or completeness of any information in a consumer report furnished by the CRA. Effective July 21, 2011, the party taking the adverse action must also disclose any numerical credit score that contributed to the adverse action, along with certain related information.

1. RELATION TO OTHER SECTIONS AND REGULATION B

   A. <u>FCRA – employment</u>. An employer who uses consumer reports to make employment decisions must make the adverse action disclosures required by both section 604(b) and section 615(a), even though there is some duplication of the disclosures required by those two subsections in the employment context.[271] Because the section 604(b)(3) notice must be provided to consumers before adverse action is taken, and the section 615(a)(2) notice must be provided after adverse action is taken, they may not be included in the same document.[272]

   B. <u>FCRA – risk-based pricing</u>. Section 615(h) generally requires creditors, in those cases that are not "adverse action" but involve extensions of credit on terms materially less favorable than

those available to a substantial portion of customers, to provide a "risk-based pricing notice" when the decision is based in whole or in part on a consumer report. See comment 615(h)-1.

C. FCRA – miscellaneous. Section 606 also requires users of investigative consumer reports to make certain disclosures to consumers.[273] Section 603(k) defines the term "adverse action."

D. ECOA. Creditors should not confuse compliance with the adverse action notice provisions of section 615(a) with compliance with the Equal Credit Opportunity Act, 15 U.S.C. §§1691 *et seq.* and Regulation B, 12 CFR Part 202, which require disclosure of the reasons for adverse action. Providing the adverse action notice required by section 615(a), therefore, does not necessarily constitute compliance with Regulation B, although a creditor can comply with both the FCRA and the ECOA through the use of a single notice. See 12 CFR Part 202, Appendix C (model adverse action notices that can be used to comply with FCRA and ECOA).[274]

2. ADVERSE ACTION INVOLVING CREDIT

A. In general. A creditor must provide an adverse action notice when it denies the consumer's request for credit or for increased credit (including a rejection based on a scoring system) based in whole or in part on a consumer report.[275] Where a consumer applies for credit on particular terms, is offered credit only on less favorable terms based on information in his/her consumer report, and refuses to accept those terms or use the credit offered, the consumer is entitled to an adverse action notice. However, if the consumer accepts the credit offered, the consumer is not entitled to the adverse action notice.[276] See comment 603(k)(1)(A)-1, which sets forth the definition of "adverse action" under the ECOA and its implementing Regulation B that also serves as the definition of "adverse action" for FCRA purposes under section 603(k)(1)(A). However, the consumer may be entitled to a "risk-based pricing notice" under section 615(h).

B. Multiple applicants. When there are two applicants, a creditor must provide an adverse action notice to *both applicants* if the application is denied, even in part, based on information in a co-applicant's consumer report. However, a creditor need not provide a guarantor with an adverse action notice, even if the application is denied in whole or in part based upon information from the consumer report of the guarantor. Regulation B states that only an "applicant" can experience "adverse action" in a credit context and excludes a guarantor from its definiton of "applicant." 12 CFR Part 202.2(c)(1) and (e). See comment 603(k)(1)(A)-3.[277]

3. ADVERSE ACTIONS INVOLVING INSURANCE

A. In general. An insurer that refuses to issue a policy, or charges a higher than normal premium, based on a consumer report is required to comply with section 615(a).[278] See comments 603(k)(1)(B)(i)-1&2.

B. Variations in premiums offered. In offering a discounted premium rate for those with "good credit," an insurance company must provide an adverse action notice when (1) it decides not to offer the discounted rate to an existing policyholder upon renewal, based on the consumer's credit report; (2) it offers the higher rate to a potential customer based on a credit report that indicates that the individual does not qualify for the discounted rate; or (3) it quotes the discounted rate to a potential customer but later charges a higher rate due to the consumer's credit report. Similarly, a health insurer that increases premiums of a consumer, in whole or in part based on a consumer report, must provide an adverse action notice.

C. Mortgage insurance. A mortgage insurer that refuses to insure a consumer loan, based in whole or in part on a consumer report, must provide the consumer with an adverse action notice, because the insurer has made a "denial in connection with the underwriting of insurance" that requires the notice. Such refusal is an "adverse action" even if the loan application itself is ultimately approved when a second insurer agrees to provide coverage.[279]

D. Actions applicable to entire existing class of policyholders. An adverse action that applies to all or substantially all of an established class of policyholders, such as a generally applicable increase in premiums or decrease in coverage, is not "based on" a consumer report that was used at a prior time to assign the consumer to that class if the insurer provided an adverse action notice at that prior time.

4. ADVERSE ACTIONS INVOLVING EMPLOYMENT

A. General. An employer must provide an adverse action notice to an individual who has applied for employment and has been rejected based on a consumer report. Similarly, an employer must provide an adverse action notice to an existing employee who is subject to an employment decision that adversely affects his or her employment, such as termination or discipline, based in whole or in part on a consumer report. See comment 603(k)(1)(B)(ii)-2.

B. Additional adverse action duties of employers. In addition to providing the adverse action notice required by this section, employers must also comply with section 604(b)(3) by supplying the consumer (job applicant or employee) with a copy of the consumer report and a written statement of consumer rights under the FCRA before taking adverse action.

5. ADVERSE ACTION NOT INVOLVING CREDIT, INSURANCE OR EMPLOYMENT

A business that takes adverse action against a consumer in a context other than credit, insurance, or employment (e.g., a residential landlord), based in whole or in part on a consumer report, must also provide an adverse action notice. A business that determines, based on information contained in a consumer report, that a customer must pay a cash deposit (or a larger deposit) not required of all consumers, is obligated to provide a notice of adverse action to that customer.[280] An owner of a residential property that denies a consumer's rental application, or increases the rental or deposit charges, must provide an adverse action notice when information from a consumer report contributed in any way to such action. See comment 603(k)(1)(B)(iv)-3&4.

6. CREDITORS OR INSURERS USING "PRESCREENED" MAILING LISTS

A creditor or insurer is not required to provide adverse action notices regarding mailing lists prepared by CRA "prescreening" services. Consumers who have not applied for credit or insurance have not suffered adverse action in being excluded from such lists of consumers to be solicited for these products.[281] However, a consumer who agrees to accept a prescreened offer of credit or insurance, but is later denied based on a subsequent report, is entitled to an adverse action notice.

7. ADVERSE ACTION "BASED IN WHOLE OR IN PART ON ANY INFORMATION CONTAINED IN A CONSUMER REPORT"

A. No requirement that information in consumer report be derogatory. A user of a consumer report that takes adverse action wholly or partly because of information contained in a consumer report must provide the required notice to the consumer, even if the information is not derogatory. For example, the user must give the notice if the action is based wholly or partly on the absence of a file or on the fact that the file contained insufficient trade lines.[282]

B. Denial based partly on a consumer report. The user of a consumer report must provide an adverse action notice even if the adverse action is based only partly on a consumer report.[283] Similarly, if information received from a consumer report was used to prompt further investigation of the applicant's insurability, and that investigation leads to adverse action, the consumer is entitled to receive an adverse action notice.

8. ADVERSE ACTION BASED ON DIRECT INFORMATION

This section does not require any notice of adverse action if such action is based solely on information provided by the consumer in an application, or is based on past experience in direct transactions with the consumer.[284]

9. NOTICE PROVIDED BY THIRD PARTY

A user may contract with a third party to deliver the adverse action notice to the consumer, but the user remains liable if the notice is not provided.[285]

10. CONTENT OF THE NOTICE

The consumer report user must provide the name and address of the CRA from which it obtained the consumer report, even if that CRA obtained all or part of the report from one or more other CRAs.[286] See section 607(e) concerning the obligation of the intermediary agency to identify the "end-user" to the originating CRA.

Section 615(a)(1)'s mandate that the user provide "notice of the adverse action" does not require the use of the word "adverse" or the like, but it does require that the notice convey to the consumer accurately that the report led to less than optimal results for the consumer. The adverse action notice should not include untrue statements. For example, a report user may not state that the CRA from which it obtained the consumer report "did not make the decision to take the adverse action" – one of the specified disclosures – if that statement is factually incorrect (e.g., when an employer has asked the CRA to provide an opinion on whether a job applicant should be hired).[287]

11. LIMITED SCOPE OF REQUIREMENTS

This section does not require that creditors disclose their credit criteria or standards, or that employers furnish copies of personnel files to former employees. In most cases, this section does not require that the user provide advance notification to consumers before a consumer report is obtained. (But see section 606 regarding notice of investigative consumer reports, and section 604(b) regarding reports for employment purposes.)[288] This section does not impose any requirements on CRAs to compel users of consumer reports to provide adverse action notices; rather, it imposes the duty to provide adverse action notices only on users.[289]

12. REASONS FOR ACTION

Unlike the ECOA, the FCRA does not require report users to disclose specific reasons for taking adverse action, or to identify information from a consumer report that contributed to the action. However, should a report user choose to tell a consumer the reasons for the adverse action, nothing in the FCRA precludes it from doing so.[290]

**Section 615(b)(1)** provides different rights to consumers who suffer adverse action based on information obtained by "a person other than a consumer reporting agency" in the credit context. At the time the creditor informs the consumer of an adverse action, it must disclose the consumer's right to make a written request