# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**TYRONE HENDERSON,**
*on behalf of himself and others*
*similarly situated,*

        **Plaintiff,**

**v.**                                    **Civil Action No**: **3:12cv97 (REP)**

**CORELOGIC, INC.,**

**and**

**CORELOGIC NATIONAL BACKGROUND DATA, LLC,**
**f/k/a National Background Data, LLC,**

        **Defendants.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Tyrone Henderson, the Plaintiff, by counsel, and for his

Memorandum in Opposition to Defendants' Motion to Dismiss, he states as follows:

### I. Introduction

Mr. Henderson's claim is the same as those successfully prosecuted against

Defendants' industry competitors in *Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A 3:06-

cv-241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (LexisNexis), *Beverly v. Wal-Mart*

*Stores. Inc.*, CIV A 3:07-cv-00469-RLW (E.D. Va. May 1, 2009)(ChoicePoint) and *Ryals*

*v. Hireright Solutions, Inc.* CIV A 3:09-cv-625-JAG (E.D. Va. Dec. 21, 2011)

(HireRight). There is nothing either remarkable or unexpected about the allegations and

legal claims now prosecuted in this case. Defendants operate as a consumer reporting

agency (CRA) that furnishes employment purpose reports containing derogatory public

records.  As with LexisNexis, ChoicePoint and HireRight, Defendants sell criminal background checks directly to employers as well as indirectly to them through intermediary resellers.  As with its competitors, Defendants were thus required to comply with FCRA § 1681k(a).  The Complaint alleges they did not do so.[1]  Defendants' Motion should be denied.

## II. Summary of Argument

Defendants misapply the standard applicable to Rule 12(b)(6) motions, re-cast Mr. Henderson's theory of their liability stated in the Complaint in order to disregard the aspects that are contrary to their purported defenses, ignore specific factual allegations that refute their current contentions, and assert other facts that are outside the pleadings. They also misconstrue the Fair Credit Reporting Act (FCRA).  Their preemptive use of Rule 12(b)(6) is both baseless and premature, and the motion to dismiss must therefore be denied.

Contrary to Defendants' arguments, the Complaint states a claim for relief for Defendants' willful violation of 15 U.S.C § 1681k(a).  This provision is written in the disjunctive: CRAs such as Defendants, who furnish public record information that is "likely to have an adverse effect upon a consumer's ability to obtain employment," must either 1) provide the specified notice to the subject consumer "at the time such public record information is reported to the user" [§ 1681k(a)(1)] "or" 2) "maintain strict procedures" to insure the reliability and completeness of that information [§ 1681k(a)(2)].

---

[1] In fact, in the three previous cases, the defendant CRAs at least attempted § 1681k compliance and were subject to suit because of the delay in sending consumers its required notice.  In contrast, in this case Defendants are alleged to never provide such notice.

The Complaint specifically alleges that Defendants complied with neither of these obligations when they furnished the employment report that erroneously ascribed to Mr. Henderson a criminal conviction that the public record showed was not his.

Defendants argue at length that the first alternative is inapplicable to them, but they entirely ignore the second alternative. Thus, even if Defendants were correct regarding the inapplicability of § 1681k(a)(1), the Complaint alleges their violation of their remaining option to comply with § 1681k(a)(2). Therefore, the motion to dismiss and its failure to discuss the alternative basis for relief admit Defendants' violation of § 1681k(a)(2) and Mr. Henderson's claim for relief under § 1681k(a).

Even if this Court were authorized under Rule 12(b)(6) to issue the non-dispositive opinion that Defendants seek holding that § 1681k(a)(1) does not apply to them, their argument is precluded by the plain statutory language and the well-pled allegations in the Complaint. The Complaint alleges that 1) Defendants are CRAs who compiled and furnished for employment purposes to a CRA reseller, Verifications, Inc. ("Verifications"), a consumer report containing criminal conviction information from a public record that was likely to have an adverse effect on Mr. Henderson's ability to obtain employment and 2) Verifications then used the report for its own purpose of selling the information to Mr. Henderson's prospective employer to qualify him for employment. Together with the allegation that Defendants did not send Mr. Henderson the § 1681k(a)(1) notification, the allegations in the Complaint thus set forth the operative elements establishing § 1681k(a)(1)'s applicability to Defendants.

The linchpin of Defendants' contrary contention is their legal conclusion that an entity such as Verifications categorically cannot be both a CRA/reseller and a "user" to

whom the reporting of the public record information triggers the duty to send notice to the consumer under § 1681k(a)(1).  Defendants cite no authority so holding – and indeed no such authority exists.  Rather, Defendants simply assert that conclusion (while discounting the plain meaning of the word "user") and then refer to inapposite cases that have found such dual roles to be inapplicable under other FCRA provisions because of the facts in those cases.  Those cases actually refute Defendants' theory since none espouses Defendants' proffered rule of law.  Each opinion instead relies on the plaintiff's failure to allege or present facts to support the claim that the CRA used the information as required by these other FCRA provisions.  Not only does no authority support Defendants' assertion that a CRA or reseller cannot as a matter of law be a "user" of information, but the one federal court that squarely addressed the issue reached the opposite conclusion and found that the CRA there was a user of the information based on the factual record before it.  The same result attains here.

Next, Defendants argue that the Complaint does not allege a willful violation of § 1681k(a)(1) entitling Mr. Henderson to relief under § 1681n.  Again, Defendants' failure to address their § 1681k(a)(2) violation dooms their position and renders their argument regarding § 1681k(a)(1) moot under Rule 12(b)(6) standards.  Nevertheless, Defendants' contention even as to § 1681k(a)(1) cannot be sustained.

First, contrary to Defendants' argument that the Complaint merely states legally insufficient "conclusory allegations," Mr. Henderson has supported his claim that Defendants willfully violated § 1681k(a)(1) with detailed and concrete factual averments.  Specifically, the Complaint alleges that Defendants actually knew of their legal obligations that they violated here but consciously refused to comply with § 1681k(a)(1)

4

notwithstanding that they "had available substantial written materials that apprised them of their duties," and did so intentionally and purposefully in conformity with their established and systemic procedures and policies.  Whether these factual allegations are true is irrelevant at this juncture.  All that is important now is that Mr. Henderson has apprised Defendants of evidentiary details that he has undertaken to prove, that these facts are deemed established under Rule 12(b)(6), and that, if proven, Defendants will thus be shown to have acted willfully by any measure, including the stringent standard that had been established as the threshold in this Circuit before the Supreme Court adopted the lesser "reckless disregard" test for willfulness in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

Second, Defendants contend that their legal argument that a reseller such as Verifications can never be a § 1681k(a)(1) "user" passes muster under the *Safeco* "reckless disregard" test because their argument is not an "objectively unreasonable" interpretation.  Once parsed and exposed, their argument is devoid of any legal, textual, or other basis and therefore cannot be an objectively reasonable one.  But more to the current point is that, as in *Safeco* itself, the determination of objective unreasonableness here must be evaluated on a factual record and cannot be made under Rule 12(b)(6).

Defendants conclude with the extraordinary argument that because Mr. Henderson has made no claim for actual damages as a result of their violation of § 1681k(a) and instead is seeking only FCRA statutory damages, he lacks standing and this Court is deprived of Article III case or controversy jurisdiction.  Defendants are apparently arguing that Article III "injury" must be accompanied by the assertion of a corresponding entitlement to actual damages regarding each claim asserted and not a

request for statutory damages.  Defendants' abbreviated and boilerplate recitation of selected Article III cases whose facts and holdings Defendants do not even attempt to apply to this case supports no such conclusion.  The Complaint shows that Defendants' violation of § 1681k(a) directly and adversely impacted Mr. Henderson's job prospects. The allegations exemplify the distinct and personal injury that establishes standing and Article III jurisdiction under the law in this Circuit and every other jurisdiction in the country as well as show why Congress included statutory damages among the remedies available in this case.

### III. The Complaint States a Claim for Relief Arising From Defendants' Willful Violation of § 1681k(a)

**A. The Factual Allegations of the Complaint**

The allegations of the Complaint are evaluated by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."  *Stout v. Meletis*, 2012 WL 618688, *1 (E.D. Va. Feb. 24, 2012).  Mr. Henderson has alleged that the Defendants, Corelogic, Inc. and Corelogic National Background Data, LLC, f/k/a National Background Data, LLC, are each a CRA[2] and operate as a unified national CRA that compiles and maintains files on consumers and then sells consumer reports as employment-purposed background checks on a wholesale basis to resellers;[3] the resellers then rebrand and sell the information to potential employers, all of which occurs without either Defendants or the resellers ever revealing to the consumers that Defendants are the source of the original information.  ¶¶ 2, 9-19, and 25.  The Plaintiff, Tyrone Henderson, is an individual, and

---

[2] The FCRA defines a "consumer reporting agency" at § 1681a(f).
[3] The FCRA defines a "reseller" at § 1681a(u).

thus a "consumer,"[4] living in Richmond, Virginia, who in 2009 applied to Interstate

Brands Corporation ("Interstate") for a job subject to a background check.  ¶¶ 7, 8, and

21.  Interstate thereafter requested that background check on Mr. Henderson from

Verifications, a CRA and a reseller that purchases consumer reports for employment

purposes from Defendants.  ¶¶ 20 and 22.  In response to that request from Interstate,

Verifications ordered a consumer report employment background check on Mr.

Henderson from Defendants, who then furnished the report to Verifications for that

employment purpose pursuant to their standard procedures.  ¶¶ 23 and 24.

        The report that Defendants furnished to Verifications and that Verifications then

used to report to Interstate misreported public record information as showing that Mr.

Henderson had a criminal conviction in his background.  ¶¶ 26-28.  As a result, Interstate

refused to hire him.  ¶ 29.  In fact, the criminal conviction related to another person with

a similar name as Mr. Henderson but with an entirely different social security number

and address, as was unmistakably disclosed in the public record itself and patently clear

to anyone who looked.  ¶¶ 30-32, 39.

        Defendants knew that they were furnishing to Verifications the consumer report

with regard to Mr. Henderson for employment purposes and that they were reporting an

item of information that was a matter of public record that was likely to have an adverse

effect on a his ability to obtain employment.  ¶¶ 12, 13, 23, 26, 31, and 40.  With regard

to the compliance options available under § 1681k(a), Defendants never attempt to

comply with the § 1681k(a)(2) alternative regarding any consumer and accordingly did

not do so with regard to Mr. Henderson.  ¶ 41.  With regard to the § 1681k(a)(1)

---

[4] The FCRA defines a "consumer" at § 1681a(c).

alternative, Defendants did not provide notice to Mr. Henderson at the time that they reported his information to Verifications either identifying Verifications or disclosing that they were reporting the information to Verifications.  ¶¶ 33 and 40.

Defendants had actual knowledge of their legal obligations to comply with § 1681k(a) yet consciously refused to do so notwithstanding that they "had available substantial written materials that apprised them of their duties."  ¶¶ 42-44.  The entirety of Defendants' conduct that occurred here with regard to Mr. Henderson was undertaken by them intentionally and purposefully in conformity with their established and systemic procedures and policies.  ¶ 45.

**B. The Complaint States a Claim for Relief Pursuant to the § 1681k(a)(2) Alternative**

Defendants' motion is in effect a remarkable concession of liability.  Defendants accept as true, as they must, the allegations that they never comply with one of the two methods that Congress has provided to them to fulfill their obligations under § 1681k(a), the one found at § 1681k(a)(2).  And then they attempt by their motion to convince this Court that the other of the two compliance options, § 1681k(a)(1), is inapplicable and thus unavailable to them.  Since Defendants do not attempt the second and if the first is not applicable to them, then they certainly violate the statute.

Section 1681k(a) states in full as follows:

**(a) In general.–**

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall–

**(1)** at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record

information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

**(2)** maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

Significantly, §§ 1681k(a)(1) and (2) are written using the disjunctive "or." Therefore, Congress has afforded CRAs such as Defendants who are subject to this section the option to comply with either subsection (1) or (2). *U.S. v. Cooper*, 962 F.2d 339, 341 (4th Cir. 1992) ("We are bound…to interpret a statute written in the disjunctive as setting out separate and distinct alternatives.")  The Complaint alleges that Defendants never attempt to comply with the § 1681k(a)(2) alternative and thus did not do so here. ¶ 41.  Defendants do not address § 1681k(a)(2) in their current motion, advance no argument that § 1681k(a)(2) is not applicable to them under the circumstances of this case, and assert no defense in their dismissal motion or supporting memorandum to their violation of § 1681k(a)(2).

Instead, Defendants have limited their motion to arguing only that subsection § 1681k(a)(1) is inapplicable to them. As shown below, that argument is meritless. Nevertheless, that argument is an academic one at this stage of these proceedings. Defendants deny in their Answer the ¶ 41 allegation that they never make any attempt to comply with the § 1681k(a)(2) alternative regarding any consumer, including therefore with regard to Mr. Henderson.  That denial, however, only underscores the Complaint's specific factual claim that Defendants violated the § 1681k(a)(2) alternative and invokes

the axioms that "the court should accept as true all well-pleaded allegations" and that "a

motion to dismiss for failure to state a claim should not be granted unless it appears

certain that the plaintiff can prove no set of facts which would support its claim and

would entitle it to relief." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th

Cir. 1993). The Complaint plainly alleges facts that confirm that Defendants willfully

violated § 1681k(a)(2). Thus, Mr. Henderson has established his entitlement to relief for

their violation of § 1681k(a), and the motion to dismiss must therefore be denied on this

basis without any need to determine whether Defendants also violated § 1681k(a)(1).[5]

**C. The Complaint Further States a Claim for Relief Pursuant to the § 1681k(a)(1) Alternative**

Even if the Complaint had not alleged that Defendants violated § 1681k(a)(2), the

motion to dismiss would still fail. The Supreme Court has summarized the initial task in

construing a statute:

> As with any question of statutory interpretation, our analysis begins with the plain language of the statute. It is well established that, when the statutory language is plain, we must enforce it according to its terms.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (Citations omitted). Based on the

plain reading of § 1681k(a)(1), Mr. Henderson has alleged each element of that

subsection and therefore has stated a claim for relief for Defendants' violation of it.

---

[5] ¶ 41 and Count I disclose that counsel anticipate that § 1681k(a)(1) and not § 1681k(a)(2) will be the focus of this aspect of the case as this litigation proceeds. Nevertheless, the Complaint states a claim for relief under § 1681k(a)(2) and for now provides a clear basis for rejection of Defendants' current motion. This Court has considered a nearly identical case against Defendants' primary industry competitor. *Williams v. LexisNexis Risk Mgmt. Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007). As with LexisNexis, Defendants sell only from an existing database and thus never attempt to contemporaneously verify that its information is "complete and up to date." Therefore, as this Court similarly concluded in *Williams*, "That section of § 1681k is not at issue in this litigation[.]" *Id.* at n.2.

As summarized above and as detailed in the Complaint, Mr. Henderson has alleged that 1) Defendants are CRAs which furnish consumer reports for employment purposes as a matter of course and furnished the specific report to Verifications regarding Mr. Henderson knowing and intending that it was to be used for that purpose; 2) Defendants compile and report for employment purposes – both generally and as regards Mr. Henderson – items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment; 3) Defendants knew and expected that the information that they were compiling, reporting, and furnishing to Verifications regarding Mr. Henderson was to be used by Verifications for employment purposes and was in fact then used by Verifications for that purpose; and 4) Defendants did not notify Mr. Henderson at the time when the information was reported to Verifications that public record information was being reported or identify Verifications by name and address.  Not surprisingly, Defendants do not directly confront any aspect of this recitation that establishes on its face their violation of § 1681k(a)(1).

Rather, Defendants now claim as a matter of law that a reseller or other CRA can never qualify as a "user" of information under any provision of the FCRA, including § 1681k(a)(1).  The plain statutory language debunks that hypothesis, caselaw further refutes any such rule of law, and the facts as alleged in the Complaint preclude Defendants' reasoning at the current point in these proceedings.

However, before joining that discussion, this Court should reach an even simpler basis to fully reject Defendants' contention that § 1681k(a)(1) is inapplicable: Defendants misconstrue the plain language of § 1681k(a) since nothing in its language limits a

11

CRA's obligation to only those reports that it furnishes directly to an end-user.  As addressed below, Verifications is a "user."  Yet even if this were not the case, § 1681k(a) would still apply.  § 1681k(a) states in simplified relevant part: "A consumer reporting agency which furnishes a consumer report for employment purposes … shall at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency[.]"  A CRA that furnishes a report must notify the consumer that it has done so at the same time that its information was reported to the user.  Defendants do not contest that they "furnished" a consumer report.  If Verifications was not a "user," then the employer would have to be, just as Defendants now argue.  The originating CRA is still responsible to both the consumer and the end-user, and the report it furnishes shares a "permissible purpose" derived from the end-user.  § 1681e(e)(1)("A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report (A) the identity of the end-user of the report (or information); and (B) each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report (or information).")  The purpose for which Defendants were permitted to furnish the report to Verifications under § 1681b was the same one for which the end-using employer requested the report.  Section 1681k(a)(1) does not limit its application to a CRA's <u>direct</u> furnishing of a report to the end-user.  Thus, even if Defendants' interpretation were correct, the information from the report that they sold to Verifications was thereafter provided to the employer, triggering the § 1681k(a)(1) obligation for Defendants to "notify the consumer of the fact that public

record information is being reported by the consumer reporting agency" at the time that the information it provided to Verifications was then furnished to the employer.

Yet Defendants' argument deadends on an alternate basis. Verifications was also a "user" of the report furnished to it by Defendants. In contrast to the list of other terms expressly defined in the FCRA [§ 1681a(a)-(x)], Congress did not choose to define the term "user." A word that "is not specifically defined in the statute…should carry its ordinary dictionary meaning." *Babcock v. BellSouth Advertising and Publishing Corp.*, 348 F.3d 73, 77 (4th Cir. 2003). Thus, "user" means "a person or thing that uses," and "use" as a verb in turn means "to employ for some purpose" or "to avail oneself of." Webster's New Universal Unabridged Dictionary, 2097 (1996).

Defendants need to ignore the plain language of § 1681k(a)(1) in order to make their argument. They disregard the ordinary meaning of the word "user" and instead must explain at the very outset of their Memorandum that their argument that Verifications is not a "user" of the information is based on their proposition that Congress actually used the word "user" to mean no more than the "end user (i.e., prospective employer)" and to exclude all other users. Defs. Mem. p. 1. This blatant modification of the statutory language is especially egregious because Congress actually employed the term "end-user" or "end user" several different times in the FCRA but not in § 1681k as Defendants would have preferred. *See* § 1681e(e)(1)(A), § 1681e(e)(1)(B), § 1681e(e)(2)(A)(i), § 1681e(3), § 1681e(3)(A), § 1681g(a)(3)(A), and § 1681g(a)(3)(C)(i). Congress's differentiation between the terms "user" and "end user" within the statute thus negates the basis for Defendants' argument. *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) ("where Congress includes particular language in one

section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion") (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

Defendants' construct of limiting the term "user" to only the "end user" is therefore contrary to the plain language of the FCRA and is an admission that for Defendants to prevail the word "user" in § 1681k must denote something other than its ordinary meaning.  Based on their argument that the statutory term "user" means the same as the separate statutory term "end user," Defendants then claim that Verifications is not an end user/prospective employer in order to create the illusion that the plain language of the statute is not plain.  Defs. Mem. p. 7-11.  Their conclusion is as flawed as their methodology.

Rather than examine the plain meaning of § 1681k(a)(1), Defendants merely look to other provisions of the FCRA purportedly to show that the term "user" there applies only to the prospective employer.  Examples that Defendants cite include the adverse action provisions of § 1681b(b) and § 1681m, with which Defendants contend that only the prospective employer can possibly comply.  Even if it were true that a CRA or reseller could not comply with these provisions, that showing would still have no bearing on § 1681k(a)(1).  However, Defendants fail to acknowledge that under the facts presented in *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, --- F.Supp.2d ----, 2012 WL 975043, *3-8 (E.D. Pa. March 22, 2012), a case which Defendants actually cite for another purpose (Defs. Mem. p. 19), the CRA that furnished the employment report there also qualified as a person "using a consumer report for employment purposes" who was required to send specified notices to the consumer.

*Goode*, together with the allegations in the Complaint and the plain language of § 1681k(a)(1), disprove Defendants' putative legal proposition and demonstrate to the contrary that a CRA can also be a user of information when supported by the facts, as here. The allegation of the Complaint that Verifications used Defendants' consumer report for its own employment purposes – to provide a rebranded and reissued employment report to Mr. Henderson's prospective employer – is not inconsistent with its status as a CRA reseller. No doubt Defendants are correct that at times and pursuant to the facts in certain circumstances CRAs and users "have distinct meanings and responsibilities under the FCRA," and Defendants have cited a few cases that illustrate that point. Defs. Mem. pp. 10-12. However, Defendants' extrapolation from those instances when CRAs and users have been found to be acting in separate capacities to conclude that those roles are always mutually exclusive is entirely unwarranted. The Complaint shows that Verifications performed both reseller/CRA and user functions here, and unless these facts are disproved, Defendants have no textual or legal basis to assert otherwise.

Defendants' quotations from the July 2011 FTC FCRA Staff Report [Defs. Mem. pp. 12-13] continue this same untenable tactic of turning an unremarkable statement of the law into a gratuitous and unintended rule of exclusion. Defendants repeat the FTC Staff's unexceptional statement that "CRAs that provide reports for employment purposes must comply with [§ 1681k(a)(1)], even if they are merely resellers of consumer reports obtained from other CRAs." This statement does not support Defendants' proffered inference that this reseller duty relieves the wholesaler of its responsibility to comply with § 1681k(a)(1). To the contrary, the quotation makes clear

15

that § 1681k(a)(1)'s plain statutory language applies to both the wholesaler CRA and the reseller CRA.  Indeed, the final conditional clause that Defendants trumpet only makes sense because wholesalers such as Defendants must first provide their own notice to the consumer when they initially sell the employment report to a reseller.  Both the statutory language and the FTC Staff Report are clear that the law provides that the wholesaler CRA's reportage to the reseller already triggers a § 1681k(a)(1) notification.

Similarly, Defendants' second quotation from the FTC Staff Report, which advises that pursuant to § 1681b a "CRA may furnish a consumer report to another CRA, so that the second CRA can sell such reports to subscribers with a permissible purpose," does not state Defendants' desired converse rule of exclusion.  The fact that the FCRA allows one CRA to furnish a consumer report to another CRA to then furnish the information to another person with a "legitimate business need" or any other permissible purpose listed in § 1681b(a) is logical and complies with § 1681b. But neither § 1681b or § 1681k(a) authorizes a wholesaler CRA to ignore its own responsibilities when, as here, it knows that it is furnishing a consumer report to a reseller for employment purposes subject to § 1681k(a).  Defendants' attempt to twist the FTC Staff's general affirmative statement of § 1681b compliance into a rule precluding all other aspects of the subject matter and in all other sections of the statute is absurd.

Fundamentally, all that Defendants have shown is that they are opposed to the policy choices that Congress made in drafting the FCRA and particularly § 1681k(a)(1)'s important requirement that a qualifying reseller CRA and wholesaler CRA must each provide its own notice to the consumer.  Defendants repeatedly assert that their real challenge to § 1681k(a)(1) is that the Congress's handiwork is "completely redundant,"

"purely redundant," "extremely redundant," and the like.  Defs. Mem. pp. 2, 13-15.

Defendants are actually objecting to (and now attempting to wreck) the integrated

statutory scheme and the reasonable safeguards that Congress has carefully crafted when,

as here, an individual's livelihood is jeopardized by adverse employment reporting.

The FCRA's notice provisions, including § 1681k(a)(1), are the foundation of

consumer oversight on which Congress built FCRA compliance.  No one has a stake in

the accuracy of a consumer report like the individual to whom it relates.  While the FTC

and other regulators deal as best they can with systemic issues (§ 1681s), Congress has

not funded the army of regulators that would be necessary to monitor the hundreds of

millions of consumer files that the nation's CRAs maintain.  Congress gave that role to

each of the individuals whose tranquility and material well-being are determined by these

faceless, computer-generated reports. *See Bryant v. TRW Inc.*, 689 F.2d 72, 79 (6th Cir.

1982) (quoting 116 Cong. Rec. 36570 (1970)) ("[A]s Shakespeare said, the loss of one's

good name is beyond price and makes one poor indeed").

Congress and the FTC both have reaffirmed the regulators' own staffing

limitations and the critical role played by consumers.  During the legislative hearings that

culminated in the 1996 amendments to the FCRA, the FTC acknowledged that the FCRA

"was designed to be largely self-enforcing" and expressed its position directly to

Congress that any amendments maintain "the capacity of consumers to bring private

actions to enforce their rights under the statute."  S. Rep. 103-209, 103d Cong., 1st Sess.,

at 6 (1993).  Congress's response was to strengthen private enforcement by encouraging

consumer involvement and litigation through the adoption of, inter alia, the minimum

§ 1681n(a)(1) statutory damages that Defendants are now challenging.

The notices that Congress included in the FCRA provide consumers with the information necessary to inform and then perform their self-help functions. The indispensable first step in the process is to determine the identity of the CRA that is maintaining the consumer's file in order to then request disclosure of its contents pursuant to § 1681g. National Consumer Law Center, Fair Credit Reporting, at 73 (7th ed. 2010) ("Consumers can review a report of the file contents to determine if there is inaccurate or incomplete information. Understanding the nature of negative information in the file also is an aid to improving the consumer's credit profile. Disclosure of the consumer's file is an essential first step to handling almost any problem relating to a consumer's credit file and consumer reports related to the file"); *Gillespie v. Equifax Information Services, L.L.C.* 484 F.3d 938, 941 (7th Cir. 2007) ("A primary purposes of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i"); *see also Mourning v. Family Publication Serv., Inc.*, 411 U.S. 356, 364 (1973) ("[B]lind economic activity is inconsistent with the efficient functioning of a free economic system such as ours"). Only Defendants' and other wholesalers' compliance with § 1681k(a)(1) provides Mr. Henderson and all other such consumers with that indispensable information as Congress has directed. Even if Verifications had complied with the notice requirements of § 1681k(a)(1) and if Interstate had complied with its notice obligations as a prospective employer [*see* §§ 1681b(b) and 1681m], Mr. Henderson and other consumers similarly situated would still not have known that Defendants were the ultimate source of their

personal information.  No other notice provision of the FCRA would have identified

Defendants under these circumstances, and in fact none did.

Congress's decision to write § 1681k(a)(1) to require the dual notice – or even

multiple notices under other circumstances – is cogent and compelling.  Consumers must

know the source of the information maintained about them, and no CRA has the right to

conceal its role as the repository of that information.  The dual notice requirement in no

way is "completely," "purely," or "extremely redundant;" it is not even "redundant," and

Defendants' misinformed and hyperbolic presentation cannot mask § 1681k(a)(1)'s

salutary role within the statutory scheme.


**D. Willfulness Cannot be Precluded as a Matter of Law on the Current Record**

**1. Introduction**

Defendants' accusation that the Complaint is insufficient because its allegations

of willfulness are supposedly conclusory and "bereft of any facts" (Defs. Mem. p. 22) is

objectively false.  As shown by the Complaint and summarized above, Mr. Henderson

has alleged that Defendants knew of their legal obligations but consciously refused to

comply with § 1681k(a)(1) although they "had available substantial written materials that

apprised them of their duties," and did so intentionally and purposefully in conformity

with their established and systemic procedures and policies.[6]  Rather than conclusory, the

allegations provide evidentiary detail of precisely what Mr. Henderson will prove and

---

[6] Defendants' myopic view of the Complaint is based only on citation to ¶ 56 (which
does allege the legal conclusion of willfulness entitling Mr. Henderson to § 1681n
statutory and punitive damages), without acknowledging ¶¶ 42-45, which provide the
specific allegations of Defendants' knowledge, purpose, and state of mind and the
accompanying evidentiary detail that Defendants ignore.  Defs. Mem. p. 22.

give Defendants more than the required "fair notice of what the claim is and the grounds upon which it rests." *Stout v. Meletis, supra,* 2012 WL 618688, *1, quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and *Conley v. Gibson,* 355 U.S. 41, 47 (1957).[7] An allegation that "a defendant was aware of the FCRA, but failed to comply with its requirements, [is] sufficient to support an allegation of willfulness and to avoid dismissal." *Singleton v. Domino's Pizza, LLC,* 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) (citations omitted). Defendants' passing *pro forma* contrary contention is unfounded.

**2. Defendants Fail to Address and Therefore Concede That the Complaint States a Claim for Willfulness Pursuant to the Conscious Disregard Standard**

If true, this evidence of actual knowledge, conscious disregard, and purposeful and intentional noncompliance will establish Defendants' willful violation of § 1681k(a)(1) to the satisfaction of even the Fourth Circuit's stringent pre-*Safeco* "reckless disregard" minimum standard of willfulness: the plaintiff must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Dalton v. Capital Associated Industries, Inc.,* 257 F.3d 409, 418 (4th Cir. 2001) (citations and internal quotation omitted). Defendants' decision to argue only that their putative reading of § 1681k(a)(1) is not "objectively unreasonable" pursuant to *Safeco* rather than to contest Mr. Henderson's allegations that meet the higher

---

[7] In light of Defendants' defense to § 1681k(a)(1), it is significant that among these "available substantial written materials" surely will be Defendants' operating agreement with Verifications. No doubt, this agreement will conform to established industry practices and existing models. Based on that understanding, Mr. Henderson can now proffer that the evidence will show that Defendants entered into a routine user agreement with Verifications that, *inter alia*, defines Verifications' role as a user, binds Defendants to providing to Mr. Henderson the § 1681k(a)(1) notification that they now argue is inapplicable to them, and otherwise refutes their current argument.

conscious disregard or knowing standard invites this Court to deny the motion to dismiss on this basis.

The Supreme Court held in *Safeco* that § 1681n willfulness "cover[s] not only knowing violations…but reckless ones as well." 551 U.S. at 48. Defendants ignore this portion of the *Safeco* opinion, and as a result their willfulness argument misquotes and certainly misunderstands the import of *Safeco*.

Underscoring their omission, Defendants state that the Supreme "Court also concluded that this willfulness standard is not met 'unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" (Defs. Mem. pp. 16-17). But Defendants omit the following emphasized language at the beginning of the quoted sentence that limits the stated rule to the "reckless disregard" prong of willfulness: "Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 551 U.S. at 69 (emphasis added).

Shortly after *Safeco* was decided, the Fourth Circuit confirmed that an FCRA plaintiff may prevail under either the pre-*Safeco* knowing or "conscious disregard" standard or its lower-threshold "reckless disregard" test. This confirmation occurred when the Fourth Circuit affirmed in *Saunders v. Branch Banking and Trust Co.* the FCRA punitive damages awarded by the jury under the "conscious disregard" instruction

prevailing at the time of trial in the face of similar *Safeco* arguments made by the same

defense team now in this case:

> The Supreme Court has since held that willful violations of FCRA include violations committed in reckless disregard of a company's obligations under FCRA. *Safeco Ins. Co.,* 127 S.Ct. at 2208–10. Thus, the jury instructions placed an even greater burden on Saunders than current Supreme Court precedent would require.

526 F.3d 142, 151 n.4 (4th Cir. 2008).

This Court reached the same conclusion in affirming the jury verdict in *Mullins v.*

*Equifax Information Services, LLC*, 2007 WL 2471080, *2 (E.D. Va. Aug. 27, 2007):

> The case was tried on, and the jury was instructed pursuant to, the law of this circuit at the time of trial in the issue of willfulness. See *e.g., Dalton v. Capital Associated Industries, Inc.,* 257 F.3d 409 (4th Cir.2001). Thereafter, the Supreme Court of the United States decided *Safeco Ins. Co. of America v. Burr,* 127 S.Ct. 2201 (2007), which actually articulated a standard for willfulness that was less stringent than the standard which controlled the trial and the jury verdict.

> Viewed as a whole, the record here supports a finding of willfulness under either standard. The plaintiff presented evidence from which the jury reasonably found [the defendant CRA] deliberately and consciously committed the violations of the FCRA found by the jury. Certainly, the evidence supports a finding under the rule of *Safeco.*

Applying these holdings and illustrating the conclusion that Mr. Henderson has

stated a claim for Defendants' conscious disregard violation of the FCRA is the opinion

in *Vidoni v. Acadia Corp*., 2012 WL 1565128 (D. Me. Apr. 27, 2012).  There the court

addressed the defendant's motion to dismiss an FCRA claim under both the "Knowing

Violation" [III(A)] and the "Reckless Disregard" [III(B)] standards, explaining as

follows:

> The Supreme Court has defined "willfulness" for purposes of FCRA actions as covering "not only knowing violations ... but reckless ones as well...."….In order to allege a willful violation, there must be some allegation that the Defendant knew of the standard and voluntarily or intentionally violated it….This concept of deliberateness is repeated throughout the Supreme Court cases which have

> developed and elucidated the "willfulness" standard leading to its iteration in the *Safeco* case….
>
> Although Safeco was concerned with establishing the "reckless disregard" prong of willfulness, it did not discard or undermine the Court's earlier explanations of the term "willful."
>
> Merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, *i.e.* a voluntary, deliberate, or intentional violation.

2012 WL 1565128, *2-4.  The Complaint here alleges precisely such "a voluntary, deliberate, or intentional violation" of both § 1681k(a)(1) and § 1681k(a)(2), and Defendants' motion to dismiss must therefore be denied.

**3. Defendants' Current "Reckless Disregard" Defense Cannot be Resolved under Rule 12(b)(6)**

Irrespective of whether the Complaint states a claim for willfulness under the conscious disregard standard, Defendants cannot establish their reckless disregard defense as a matter of law to show that their misinterpretation of § 1681k(a)(1) is not "objectively unreasonable."  One conclusion that is now palpable is that the text of § 1681k(a)(1) itself is unambiguous.  No doubt Mr. Henderson will have the opportunity at the appropriate time to show this Court that § 1681k(a)(1) is plain and clear, that Defendants' argument that a § 1681k(a)(1) "user" is restricted to only the "end user" and includes no other "user" is baseless, irrational, and frivolous, and that therefore their interpretation of § 1681k(a)(1) is objectively unreasonable.  The salient point for now, however, is that Defendants have not attempted to parse or challenge the plain statutory language and that § 1681k(a)(1) appears on its face to be manifestly pellucid. Accordingly, Defendants' motion to dismiss on *Safeco* grounds must be denied.

23

Rather than burden this Court with unnecessary content, Mr. Henderson presents

this cogent explanation from Judge Chasanow in the following extended quotation from

the *Domino's Pizza's* opinion demonstrating beyond question why Defendants' motion

cannot be sustained:

### D. Domino's Is Not Entitled to Dismissal of Counts Two and Three on the Ground that Its Interpretation of the FCRA "Was Not Objectively Unreasonable"

In its final argument, Domino's maintains that, even if the BIIC form did violate the FCRA, its interpretation of the statute's disclosure and authorization requirements "was, at a minimum, not objectively unreasonable."….

The Supreme Court has held that a defendant does not willfully violate the FCRA "unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco,* 551 U.S. at 69. That is, unless the defendant's interpretation of the statute is objectively unreasonable, a plaintiff will be unable to show that the defendant willfully violated the FCRA. "Where the reading has 'a foundation in the statutory text ... and a sufficiently convincing justification,' " the interpretation is not objectively unreasonable, even if the reviewing court disagrees with it. *Smith,* 711 F.Supp.2d at 434 (quoting *Safeco,* 551 U.S. at 69). Domino's clings to this language, asserting that its inclusion of the liability release in the BIIC form resulted from a reasonable reading of § 1681b(b)(2). The company's reliance on *Safeco,* however, is misplaced for two reasons.

First, the procedural posture of the *Safeco* case differed in a critical manner from the present action. "[T]he Supreme Court [in *Safeco* ] was operating under a summary judgment standard of review. It found no genuine issue of material fact as to whether the defendant's interpretation of the statute—albeit erroneous—was objectively unreasonable." *Id.* at 436. In this case, however, a motion to dismiss is pending, and discovery has not yet begun. Thus, at present, there is no evidence that Domino's actually adopted the interpretation of § 1681b(b)(2) that it proposes here. *See Gillespie v. Equifax Info. Servs.,* No. 05 C 138, 2008 WL 4316950, at \*7 (N.D.Ill. Sept. 15, 2008) (denying a motion for summary judgment where, among other reasons, a defendant had not offered evidence that it "actually adopted a particular construction" of the relevant statutory section). On similar facts, numerous courts have declined to examine the reasonableness of a defendant's statutory interpretation when ruling on motions to dismiss. *See, e.g., id.* at 436–37; *Korman v. Walking Co.,* 503 F.Supp.2d 755, 761 (E.D.Pa.2007) (noting that, "at the motion to dismiss stage, the Court's only role is to determine" whether the

complaint sufficiently alleges willfulness (citing *Jordan v. Fox, Rothschild, O'Brien, & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994))).[FN18]

FN18. Indeed, the few courts that have considered the matter when evaluating a motion to dismiss have offered no justification for doing so. *See, e.g., King v. MovieTickets.com, Inc.,* 555 F.Supp.2d 1339, 1341–42 (S.D.Fla.2008).

Second, even if it were appropriate to reach this issue on a 12(b)(6) motion, Domino's would not prevail. Unlike in *Safeco,* where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning," *Smith,* 711 F.Supp.2d at 436. *See Edwards v. Toys "R" Us,* 527 F.Supp.2d 1197, 1209 (C.D.Cal.2007) ("This case presents a different situation than *Safeco* because [the FCRA provision at issue] is not ambiguous or susceptible of conflicting interpretations.").[FN19] Domino's has pointed to no authority that would lead to a contrary conclusion.

FN19. The remaining cases on which Domino's relies in support of this argument are distinguishable for the same reason. *See, e.g., Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008) (concluding that a defendant did not willfully violate the FCRA's "clear and conspicuous" requirement when using six-point font in a disclosure document because, among other things, the meaning of "conspicuous" was "not clear' "); *Long v. Tommy Hilfiger U.S.A., Inc.,* No. 09–1701, 2011 WL 635271, at *5–7 (W.D.Pa. Feb. 11, 2011) (finding that statutory ambiguity, along with a "dearth of guidance" from agency or judicial authorities, rendered a defendant's interpretation "objectively reasonable"), *aff'd,* ––– F.3d –––, 2012 WL 180874 (3d Cir. Jan. 24, 2012).

At bottom, the basis of the company's argument is that "the paucity of [judicial] authority on the [disputed] statutory provision" precludes the conclusion that the company acted in an objectively unreasonable manner. (ECF No. 24, at 12).[FN20] This argument is unpersuasive because it ignores the guidance provided within the statutory provision itself. Where "the text of [the] statute is clear and open to only one reasonable interpretation ... a dearth of guidance does not render [a] defendant's readings plausible." *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F.Supp.2d 960, 964 (N.D.Ill.2007); *Ramirez v. MGM Mirage, Inc.,* 524 F.Supp.2d 1226, 1235 (D.Nev.2007) (quoting *Follman,* 532 F.Supp.2d at 964). Because the plain language of § 1681b(b)(2) indicates that inclusion of a liability release in a disclosure form violates the FCRA's disclosure and authorization requirements, Domino's fails to show that its interpretation of this section was "not objectively unreasonable." (ECF No. 22, at 21). Dismissal of counts two and three on this ground is, therefore, improper.

FN20. In its reply, Domino's states that the court in *Reardon* found the same arguments now advanced by Plaintiffs "novel" and " 'the legal issue with respect to the requirements of the statute' ... 'close.' " (ECF No. 24, at 16 (quoting 2011 WL 1628041, at *7)). Domino's, however, mischaracterizes the *Reardon* opinion in

making this assertion. The *Reardon* court made these statements with regard to issues unrelated to those disputed here.

*Singleton v. Domino's Pizza, LLC*, *supra,* 2012 WL 245965, at *9-10 .

Each explanation and conclusion that Judge Chasanow reached in *Domino's Pizza* is dispositive here, reveals the multiple errors and flawed conclusions in Defendants' Memorandum, and need not be repeated.[8]  Indeed, to entertain Defendants' motion would breach the fundamental precepts governing Rule 12(b)(6) practice: "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Stout v. Meletis*, supra, 2012 WL 618688, *1 (citations and quotation omitted). Defendants' motion is meritless as well as premature and must be denied.

## IV. Mr. Henderson Has Alleged Injury Conferring Standing on Him and Article III Case or Controversy Jurisdiction on This Court

Mr. Henderson has alleged no actual damages sustained as a result of Defendants' violation of § 1681k(a), and, as Defendants point out (Defs. Mem. pp. 22-23), has not sought to state a claim for relief under § 1681*o* for their negligent noncompliance with that provision.  In Count III the Complaint does state a claim for his actual damages caused by Defendants' violation of § 1681e(b).  These actual damages, which arise from

---

[8] The later decision in *Goode* granting a motion to dismiss as to one count on the "objectively unreasonable" issue but sustaining the willfulness claim regarding another count confirms these holdings and the result in *Domino's Pizza.*  The count the court dismissed had pled a claim and section of the FCRA never before applied to a CRA; a CRA had never even been sued under the section at issue in *Goode.*  In contrast to here, the *Goode* opinion relies completely on the absence of supporting factual averments as to the count it dismissed.  2012 WL 975043, at 9-10.  And, consistent with the claim presented here, *Goode* sustained the other count because the "defendant's reading of [the FCRA provision] is contrary to the text" and in addition the "plaintiffs have pled facts sufficient" to support their claim.  *Id.* at *10-11.

Defendants' "fail[ure] to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding" him, consist of his "loss of employment" and specified hedonic injury. ¶¶ 72-75.  In contrast to the injuries flowing from Defendants' § 1681e(b) noncompliance under Count III, Mr. Henderson's actual damages resulting from their § 1681k(a) violation under Count I are difficult to prove.  Mr. Henderson therefore is seeking the statutory damages that Congress has provided in § 1681n(a)(1)(A) as an alternative to actual damages.  ¶ 58. On this record Defendants now contend that Mr. Henderson lacks standing that has deprived this Court of Article III case or controversy jurisdiction.

Defendants have improperly conflated actual damages with Article III injury. They have undertaken no analysis of the doctrine that they are asserting nor have they attempted to apply that doctrine to the facts of this case or to the availability of statutory damages that the FCRA allows in lieu of actual damages.  Defendants present a short boilerplate summary of Article III jurisprudence but have not even made a preliminary showing to support their argument.  Though Defendants' § 1681k(a) violation may have caused Mr. Henderson little or no provable damages, the allegations of the Complaint still show that he suffered injury, and specifically the type of injury that meets Article III requirements.  While Defendants' initial § 1681e(b) violation caused Mr. Henderson readily provable actual damages, including the loss of his job, their § 1681k(a) violations are akin more to the salt that they added to his then-existing wounds.

Defendants' undifferentiated argument misstates the applicable law:

It is important not to confuse this standing requirement with the entirely separate element that requires proof of actual damages. *Chao* [*Doe v. Chao*, 540 U.S. 614, 624-25 (2004)] explained that a plaintiff who satisfied the adverse effect requirements merely "open[ed] the courthouse door" for standing purposes, but

> was not entitled to recovery until he proved actual damages. *Id.; see also, Quinn v. Stone,* 978 F.2d 126, 135 n. 15 (3d Cir.1992)(stating that "[t]he adverse effect that a plaintiff must show within the meaning of [the Privacy Act] is not necessarily equivalent to 'actual damages' ").

*Fort Hall Landowners Alliance, Inc. v. Bureau of Indian Affairs,* 407 F.Supp.2d 1220, 1225 (D. Idaho 2006).

Here, unlike in the Privacy Act examined in *Chao,* Congress has provided statutory damages without regard to incurring actual damages. *Compare Chao*, 540 U.S. at 617-27 (Plaintiffs must prove some actual damages to qualify for the minimum statutory award under the Privacy Act) *with Beaudry v. Telecheck Services, Inc.,* 579 F.3d 702, 705-06 (6th Cir. 2009) (Consumers may recover FCRA statutory damages without alleging actual or consequential damages). Judge Posner explained in an earlier FCRA case the principles underlying that Congressional choice here: "Many statutes, notably consumer-protection statutes, authorize the award of damages (called 'statutory damages') for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory." *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001); *accord Murray v. GMAC mortg. Corp.,* 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury"). The Fourth Circuit adheres to the same principles, as it explained with reference to the Internal Revenue Code:

> The $1,000 statutory damage award specified in I.R.C. § 7431(c)(1)(A), is included for the benefit of taxpayers. Actual damages for the invasion of privacy that occurs when tax returns are wrongfully disclosed can be hard to quantify. In order to encourage taxpayers to act as "private attorneys general" and pursue suits against the IRS for violations of I.R.C. § 6103, Congress enacted the statutory damages provision to ensure that in meritorious cases of wrongful release a taxpayer would not walk away from the courthouse empty-handed for failure of

proving damages. *See generally, Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 222 n. 14 (4th Cir.1978) (explaining the purpose of statutory damages).

*Scrimgeour v. Internal Revenue,* 149 F.3d 318, 328 n.11 (4th Cir. 1998).

The Complaint alleges and Mr. Henderson will prove the "personal injury fairly traceable" to Defendants' violation of § 1681k(a) that is required by Article III.

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006).  The Sixth Circuit has succinctly re-stated this rule with respect to the FCRA standing and jurisdictional issues presented here:

> No Article III (or prudential) standing problem arises, it bears adding, if Beaudry is permitted to file this claim….[A]lthough a right created by Congress need not be economic in nature, it still must cause individual, rather than collective, harm. The Act's statutory damages claim clears this hurdle as well: It does not authorize suits by members of the public at large*;* it creates an individual right not to have unlawful practices occur with respect to one's own credit information, 15 U.S.C. § 1681n. This nexus between the individual plaintiff and the legal violation thus suffices to sustain this statutorily created right.

*Beaudry v. TeleCheck Services, Inc.,* 579 F.3d at 707 (citations and internal quotation omitted).

Mr. Henderson's injuries flowing from Defendants' § 1681k(a)'s violation are personal and individualized: they result directly from Defendants' mishandling of his own credit information and their resulting interference with his job prospects, livelihood, and material wellbeing.  Defendants' Constitutional challenge must therefore be rejected.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

**TYRONE HENDERSON,**
*on behalf of himself and others*
*similarly situated*

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2012, I will file the foregoing pleading electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
Richmond, VA 23219
Email: david.anthony@troutmansanders.com

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
Richmond, VA 23219
Email: tim.stgeorge@troutmansanders.com

*Counsel for Defendants*

                        _____/s/_____
                        Leonard A. Bennett, Esq.
                        VSB #37523
                        Attorney for Plaintiff
                        CONSUMER LITIGATION
                        ASSOCIATES, P.C.
                        763 J. Clyde Morris Boulevard, Suite 1-A
                        Newport News, Virginia 23601
                        (757) 930-3660 - Telephone
                        (757) 930-3662 – Facsimile
                        lenbennett@cox.net