UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON,

      Plaintiff,

v.                              Civil Action No. 3:12cv97 (REP)

CORELOGIC, INC., *et al.*,

      Defendants.

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

      Defendants, CoreLogic, Inc. and CoreLogic National Background Data, LLC f/k/a National Background Data, LLC (collectively, "CoreLogic"), by counsel, submit the following reply memorandum in support of their Motion to Dismiss Count I of Plaintiff's Complaint.

### INTRODUCTION

      In an attempt to mask the nature of his truly unprecedented legal position, Plaintiff begins his brief with the misstatement that this case is "the same" as three other actions that have been adjudicated within the Eastern District of Virginia. Mem. Opp. at 1. That is entirely untrue.

      In all three cases cited by Plaintiff, the consumer reporting agency at issue provided the data in question directly to the employer/user of that data. *See id.* In this case, however, Plaintiff alleges that CoreLogic, a consumer reporting agency ("CRA"), sold public-record consumer information concerning Plaintiff to *another CRA*, Verifications, Inc. ("Verifications"), which is a "reseller." The information was then furnished by Verifications to Interstate Brands Corporation ("Interstate"), which in turn used the data in making an employment decision about Plaintiff.

      Simply put, no court, either within the Fourth Circuit or elsewhere, or any interpretation or regulation from the Federal Trade Commission, has *ever* applied the requirements of 15

U.S.C. § 1681k(a) of the Fair Credit Reporting Act ("FCRA") to a wholesaler of data such as CoreLogic that provides data to a reseller.   Indeed, the provisions of the FCRA and other persuasive authority compel the contrary result.   Furthermore, even if the Court were to conclude that CoreLogic did somehow technically violate § 1681k(a), Plaintiff has failed as a matter of law to allege that any such violation was "willful."   As a number of courts have held, including the Supreme Court in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), the issue of willfulness under the FCRA in a circumstance such as here is properly assessed on a pretrial motion without the need for factual inquiry.   Moreover, with no claim of "actual damages" under Count I, Plaintiff lacks standing to pursue Count I.

<u>**ARGUMENT**</u>

## I.   **PLAINTIFF HAS NOT PLED A CLAIM UNDER § 1681k(a)(2), BUT ANY SUCH CLAIM ALSO WOULD FAIL.**

Plaintiff's factual allegations and claim under Count I are expressly based on 15 U.S.C. § 1681k(a)(1).   Plaintiff's threshold argument against the Motion to Dismiss is, however, that "[Defendants] advance no argument that § 1681k(a)(2) is not applicable to them under the circumstances of this case, and assert no defense in their dismissal motion or supporting memorandum to their violation of § 1681k(a)(2)."   Mem. Opp. at 9.   For this reason, Plaintiff contends that the motion to dismiss must be denied "without any need to determine whether Defendants also violated § 1681k(a)(1)."   *Id.* at 10.   That argument fails for two discrete reasons.

First, Plaintiff makes this argument despite the fact that he did not even plead a violation of § 1681k(a)(2).   Count One, which is the subject of this motion, is pled only under § 1681k(a)(1).   *See* Compl., Count I ("Violation of the FCRA § 1681k(a)(1)"); *Id.* at ¶ 55 ("Defendants . . .  violated 15 U.S.C. § 1681k(a)(1).").   Plaintiff's argument therefore fails to account for the substance of his *own pleading*, to which he is bound.   *E.g., Brunckhorst Co.,*

*L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 n.10 (E.D. Va. 2008) (a party is "bound by its pleading").

Second, Plaintiff's argument fails to account for the structure of § 1681k(a), whereby CoreLogic's motion applies with equal force to any putative claim that could be asserted under § 1681k(a)(2).  Section 1681k(a) provides, in pertinent part:

> A consumer reporting agency which **furnishes a consumer report for employment purposes** and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

*Id.* (emphasis added).  Thus, despite the disjunctive nature of § 1681k(a), if the allegations of a complaint reveal that the information at issue was not furnished and reported "for employment purposes," then no claim can be stated under either prong of that provision.  *Id.*

CoreLogic's opening memorandum sets forth how the information that was transmitted to Verifications from CoreLogic was not done for an "employment purpose," *see* Mem. at 13-15, which would also defeat any claim under § 1681k(a)(2).  Thus, the implications of this argument are addressed again in detail below.  For both reasons, Plaintiff's confused threshold argument must be rejected.

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER § 1681k(a).

### A.   CoreLogic did not furnish information for an "employment purpose."

In its initial brief, CoreLogic detailed how the allegations in the Complaint set forth how the transmission of data from it to Verifications was done for commercial reasons and not for

"employment purposes," as required under either subsection of § 1681k(a).  Plaintiff offers no substantive rejoinder to this point.  He simply remarks that the transmission of information from CoreLogic to Verifications was "for employment purposes and was in fact then used by Verifications for that purpose."  Mem. Opp. at 11.  That is unfounded *ipse dixit*.  The lack of any true response to CoreLogic's argument is in and of itself reason to grant this motion.

Furthermore, a proper assessment of whether a consumer report has been furnished to a reseller "for employment purposes" must start with the statutory definition of that phrase itself.  The FCRA defines the term "'employment purposes' when used in connection with a consumer report" as "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee."  15 U.S.C. § 1681a(h).  Based on this definition, courts have consistently held that the provision of data to a corporate entity that "did not intend to evaluate the consumer" for potential employment did not result in the furnishing of a consumer report for "employment purposes," even if it was "anticipated" that the recipient would provide the same consumer information to a prospective employer in the "future."  *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. USIS Commer. Serv.*, 537 F.3d 1184, 1188 (10th Cir. 2008) (affirming dismissal of the claim that defendant "failed to comply with FCRA's notice . . . requirement" as "a matter of law" for this reason); *King v. MTA Bridges & Tunnels*, 933 F. Supp. 220, 225 (E.D.N.Y. 1996).  Plaintiff lumps together all stages of the consumer reporting process in a manner that is contrary to the definition of "employment purposes" under the FCRA.

This authority is thus fatal to Plaintiff's claims under § 1681k(a).  Plaintiff contends that Verifications merely "rebranded and reissued" the information received from CoreLogic and passed that data along to Interstate.  *See, e.g.*, Mem. Opp. at 15.  There is no allegation that Verifications played *any role* in determining whether Plaintiff should be hired by Interstate.

Instead, the Complaint makes clear that Verifications served as a conduit of the information it received from CoreLogic and did not evaluate Plaintiff for employment.  Thus, Count I fails.

This conclusion is buttressed by Federal Trade Commission ("FTC") guidance under the FCRA.  FTC commentary affirms that one CRA need not have a "permissible purpose" under the FCRA for furnishing consumer reports to another CRA, as long as the end sale to a user is for a permissible purpose.  *See* "40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary Interpretations," at 81 (July 2011).  The fact that the FTC has seen fit to exempt CRA-to-CRA sales in this manner demonstrates that the FTC recognizes that such transactions are not for "employment purposes," which would itself be a "permissible purpose" under the FCRA.  *See* 15 U.S.C. § 1681b(a)(3)(b).[1]

Also, CoreLogic previously detailed how Plaintiff's legal position created an unworkable scenario under either prong of § 1681k(a).  *See* Mem. at 9.  Due to the lack of any direct contact between CoreLogic and Interstate, CoreLogic was in no position to assess whether any of the information it provided to Verifications would be reported to Interstate, and not just filtered out by Verifications.  Hence, CoreLogic was without any means to assess whether the information it provided to Verifications was even potentially "adverse" to Plaintiff's employment prospects, as is required to trigger either section of § 1681k(a).  In this sense, Plaintiff's interpretation of the provision seeks to read out the "likely to have an adverse effect" language from § 1681k(a) itself.  Plaintiff also fails to respond to this argument.  Count I must be dismissed with prejudice.

### B.   Verifications is not a "user" under the FCRA, and CoreLogic was thus not furnishing information to a "user."

---

[1] Plaintiff offers no response to this argument except to state that this exemption does not "authoriz[e] a wholesaler CRA to ignore its own responsibilities when, as here, it knows that it is furnishing a consumer report to a reseller for employment purposes."  Mem. Opp. at 16.  That contention altogether misses the point of CoreLogic's argument, which is that this exemption demonstrates that the initial sale by a wholesaler CRA to a reseller CRA *is not for employment purposes*, regardless of whether the report may ultimately be used for employment purposes somewhere down the line.

With respect to the claim that has been actually pled by Plaintiff under § 1681k(a)(1), for any liability to attach under that provision the sale of consumer information at issue must be both for "employment purposes," as discussed above, and sent to the "user" of that information. Verifications is not a user, which provides an additional reason why Count I must be dismissed.

1. **The substantial authority cited by CoreLogic demonstrates that Verifications was not a "user" of consumer information.**

In its memorandum, CoreLogic set forth voluminous statutory, regulatory, and judicial authority for the proposition that Verifications could not qualify as a "user" under the FCRA. This authority included the following: (1) that there is no express requirement in the FCRA that a CRA selling data to a reseller to provide notice to the consumer; (2) that at least four separate provisions of the FCRA which employ the term "user" make sense only when a "user" is able to take direct action against a consumer and/or has had direct contact with a consumer, neither of which criteria apply to Verifications, *see* 15 U.S.C. §§ 1681b(b)(1), 1681m, 11681c(1)(h)(1)(B), and 1681h(e); (3) that prior to the provision's amendment in 1996, 15 U.S.C. § 1681n provided that liability could be imposed on "[a]ny consumer reporting agency *or user* of information," which underscores that Plaintiff's *absolute conflation* of these disjunctive terms is contrary to what Congress intended; (4) that no requirement is imposed in any FTC regulation on the CRAs that provide reports to a mere reseller of information to comply with the requirements of § 1681k(a)(1); and (5) that judicial authority makes plain that a "user" is the entity that has the ability to take action affecting the consumer's interests.[2]  Mem. at 8-13.

---

[2] The authorities included *Lema v. Citibank, N.A.*, 935 F. Supp. 695, 698 (D. Md. 1996) (because there was no allegation that the defendants took any adverse action against the plaintiff, the defendants are "not users of information for purposes of the FCRA"); *Alvarez Melendez v. Citibank*, 705 F. Supp. 67 (D.P.R. 1988) (a defendant who merely furnished information to third parties regarding plaintiff's credit history "was not a user of consumer reports"); *Jones v. Smith-McKinney Co.*, 2004 U.S. Dist. LEXIS 29761 (E.D. Ky. Nov. 18, 2004) (same); *compare Austin v. Bankamerica Service Corp.*, 419 F. Supp. 730, 731, 733 (N.D. Ga. 1974) (a defendant who denied the plaintiff credit on the basis of information obtained in a consumer report was a "user" for purposes of the FCRA).

Those authorities and statutory context affirm the plain meaning of the term "user" and indicate that a "user," as used throughout the FCRA (including in § 1681k(a)(1)) is the person who *actually uses* the consumer data in making an employment decision; not an entity that simply allegedly "rebrands" the data in question for resale to another entity. *See, e.g., King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context.").

The *entirety* of Plaintiff's response to this extensive and highly-persuasive authority is as follows:

> Defendants merely look to other provisions of the FCRA purportedly to show that the term "user" there applies only to the prospective employer.  Examples that Defendants cite include the adverse action provisions of § 1681b(b) and § 1681m, with which Defendants contend that only the prospective employer can possibly comply.  *Even if it were true that a CRA or reseller could not comply with these provisions, that showing would still have no bearing on § 1681k(a)(1).*

Mem. Opp. at 14 (emphasis added).  In other words, Plaintiff has chosen to "respond" to the extensive judicial and statutory authorities cited in CoreLogic's initial memorandum by simply ignoring them.  Despite the irony of this position when Plaintiff then also attempts to justify his interpretation of § 1681k(a)(1) by reference to other provisions of the FCRA, *see* Mem. Opp. at 12, this approach stands in derogation of the established "rule of statutory construction which requires [courts] to read a statutory provision in a manner consistent with the statute's other provisions."  *E.g., Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998).  In light of the undefined nature of the term "user," reference to the many other provisions of the FCRA that also employ that term is critical.

## 2.    Plaintiff's reference to the provisions of the FCRA regarding "end users" and the lone decision he cites further compel the dismissal of Count I.

As his principal argument on this issue, Plaintiff references other provisions of the FCRA that speak in terms of "end users."  *See* Mem. Opp. at 13-17.  Plaintiff contends that "Congress's

differentiation between the terms 'user' and 'end user' within the statute thus negates the basis for Defendants' argument." *Id.* at 13.  That is a complete *non-sequitur*.

CoreLogic's argument is that Verifications was not a user, in any form, of the relevant consumer information.  That argument applies to *any type* of "user" under the FCRA, whether they are end users or intermediate users.  For instance, the judicial authority cited by CoreLogic addressed provisions of the FCRA that also employed the term "user," just like in § 1681k(a)(1), but nonetheless found that the entity in question could not be deemed a "user" of a consumer report when it made no decision that affected the financial status of the consumer.  Plaintiff disregards all of this analysis in making his superficial textual argument.

Plaintiff also relies on *Goode v. LexisNexis Risk & Info. Analytics Group*, 2012 U.S. Dist. LEXIS 39863, at *27-28 (E.D. Pa. Mar. 23, 2012), to make his "end user" argument.  He asserts that *Goode* held that "the CRA that furnished the employment report there also qualified as a person 'using a consumer report for employment purposes' who [*sic*] was required to send specific notices to the consumer."  Mem. Opp. at 14.  Tellingly, Plaintiff provides no recitation of the facts of the case or of the court's analysis.  And any review of the court's reasoning demonstrates that *Goode* actually *rejects* the position advanced by Plaintiff under Count I.

In *Goode*, which considered the defendant's motion to dismiss a claim under 15 U.S.C. § 1681b(b)(3)(A), the defendant set up a system by which it would perform employment evaluations for corporate employers.  *Id.* at *3.  These employers were known as "member employers." *Id.*  The court described the defendant's services as follows:

> When a member requests information about a current or potential employee, defendant searches its system for possible matches between the employee's personal information and a record on file . . . .  Once a match is verified, *defendant classifies the employee* in accordance with adjudication scores agreed upon by defendant and the member ("adjudication").  If the employee falls below a certain threshold, *defendant assigns the employee a "noncompetitive" score*.  Defendant then generates a "report" detailing the match and the adjudication and sends the report to the inquiring member.

*Id.* at *3-4 (emphases added). The plaintiffs further "alleged a complete lack of 'filtering' by the [member] employers" of the employment evaluations performed by the defendant, *id.* at *26, and "that the member employers in this case do not conduct any analysis or engage in any decisionmaking after defendant adjudicates the employee or prospective employee." *Id.* at *17.

Based on those allegations, the court held the defendant to be a user of consumer information because the defendant was actively engaged in making the employment decisions on behalf of the employer. *Id.* at *26. In reaching this holding, the court specifically *distinguished* the facts before it from other cases where the *employer* made the "decision to revoke the offer after careful consideration of the results of the background check and [the consumer's] response." *Id.* at *17 (citing *Obabueki v. International Business Machines Corp.*, 145 F. Supp. 2d 371, 378 (S.D.N.Y. 2001)).

Therefore, when actually articulated, the facts of *Goode* could not be in starker contrast to the facts alleged here, where Verifications is alleged to have simply "rebranded and reissued" the data received from CoreLogic, *see* Mem. Opp. at 15, and Verifications is not alleged to have had any role in the challenged employment decision. Accordingly, *Goode* affirms that a CRA can be said to have "used" a consumer report only when it plays an active role in the evaluation of a consumer's employment. In this manner, *Goode* further confirms that although "users" and "end users" may be distinct under the terms of the FCRA, a CRA is incapable of being classified as *either type of user* unless it acts in such a manner.[3]

---

[3] The non-binding holding in *Goode* is, of course, tempered by the fact that *Goode* was decided under § 1681b(b)(3)(A), not § 1681k(a), and also by the fact that *Goode* considered the relatively-unique situation where the defendant was itself making the employment decision. Whether the holding in *Goode* would apply either under § 1681k(a)(1) or to a defendant that merely acts as an agent by *assisting* the employer in making the ultimate employment decision was unaddressed. In any event, however, the decision does not help Plaintiff's cause in this action, and he cites no other authority in his favor.

This reasoning also requires rejection of Plaintiff's contention that CoreLogic has sought to "limi[t] the term 'user' to only the 'end user.'"  Mem. Opp. at p. 14.  CoreLogic's argument does no such thing.  Instead, CoreLogic has demonstrated that Verifications cannot be deemed a "user" under the terms of the FCRA, whether an intermediate "user" or otherwise.

### 3.      The illogical consequences of Plaintiff's position compel its rejection.

Plaintiffs' argument suffers from the further infirmity of creating an illogical scheme under the FCRA that will create consumer confusion and slow meaningful consumer reporting.  It is uncontested that § 1681k(a)(1) requires that CRAs which send adverse information to users provide notice to the consumer at the time such information is sent.  This requirement thus guarantees that at least one CRA will always have a duty to send notice to the consumer before any employment action is taken.  Plaintiff does not dispute this fact, which negates his entire "policy" argument.

Under Plaintiff's position, however, each time that a user sought a consumer report for an employment purpose, every CRA that had ever touched the information contained in that report – from the moment that information had been gathered from the public record – would have to ensure that certain disclosures were provided to the consumer.  Remarkably, Plaintiff embraces the illogical consequences that result from his position, stating that the concept of unlimited notices is "cogent and compelling."  Mem. Opp. at 19.  Plaintiff offers no principled reason for his contention, however, except to contend that redundancy is somehow welcome in the context of the FCRA.  Yet Plaintiff fails to address the fact that requiring multiple notice and disclosure requirements would slow the process of consumer reporting to a crawl.  Moreover, limiting the provision of notice to those specific instances where consumer information is actually provided to "users" of information makes good sense, as it allows a consumer to identify and focus on the

transmission of information to those entities that actually have the ability to affect his or her employment prospects, thus avoiding a potential flood of distracting, pre-user disclosure notices.

Plaintiff's argument in favor of redundancy also ignores the many other tools that are available to consumers under the FCRA to stay fully informed about their consumer reporting. For instance, consumers have the right under 15 U.S.C. § 1681g(a) to demand from any entity, at any time, "[a]ll information in the consumer's file at the time of the request." *Id.* This ensures that consumers can gain access to the full universe of any consumer reporting about them. The same is true under 15 U.S.C. § 1681s-2, which requires resellers of data to pass along notice of any consumer dispute to the wholesaler CRA. The wholesaler CRA is required to report back to the reseller, which then reports to the consumer. *See id.* These and numerous other provisions of the FCRA thus fully achieve the goal of consumer protection in the manner specifically codified by Congress while avoiding the many illogical statutory consequences that result from Plaintiff's interpretation of § 1681k(a)(1), as well as the unwelcome practical effects of that interpretation. For all of the foregoing reasons, Count I of the Complaint must be dismissed with prejudice.

### III.    THERE WAS NO WILLFUL VIOLATION OF § 1681K(A)(1).

Regardless of the Court's determination of whether CoreLogic committed any technical violation of § 1681k(a), any such violation was, as a matter of law, not "willful." Plaintiff's arguments against a finding of willfulness are based on a fundamental misunderstanding of the framework set forth in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), as well as his turning a blind eye to the numerous decisions interpreting *Safeco* to require the dismissal of a claim of willfulness on a motion to dismiss based on the same types of facts present here.

### A.    In the wake of *Safeco*, the Complaint fails to plausibly allege that CoreLogic willfully violated § 1681k(a).

In *Safeco*, the Supreme Court held that a "willful" violation of the FCRA can include both intentional and reckless conduct, the latter of which was defined as "a risk of violating the

law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. That is not in dispute. To establish "willfulness" under *either standard*, however, the Court established that it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.* To this end, in footnote 20 the Court articulated the test for determining whether a violation of an undefined or ambiguous statute was "willful":

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation *as a knowing or reckless violator*. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, *whatever their subjective intent may have been*.

*Id.* at 70 n.20 (emphases added). And if an "objectively reasonable" reading of the statute is proposed in such a context, the Court held that there was no need "to remand the case for factual development" because evidence concerning "subjective bad faith" is irrelevant. *Id.*; *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) ("What matters under *Safeco* is the text of the Act and authoritative interpretations of that text.").

Tellingly, despite his argument over the proper reading of the *Safeco* standard, Plaintiff provides scant treatment to the language of the decision itself, neglecting *entirely* the Court's recitation in footnote 20 of the proper analytical framework for assessing claims of willfulness under the FCRA. *See* Mem. Opp. at 21-22. In sum, in that passage, the Supreme Court held that adopting an objectively reasonable position under an ambiguous or undefined provision of the FCRA prevents a finding of willfulness as a matter of law, regardless of whether that finding is asserted on the basis of either "knowing" *or "reckless" conduct*. Put another way, once an "objectively reasonable" interpretation of the FCRA is established in a pretrial motion, no willful violation is possible, even under a "recklessness" standard. *Safeco*, 551 at 70 n.20. Accordingly, Plaintiff's contention that the objectively reasonable standard does not apply to claims of a reckless violation of the FCRA, *see* Mem. Opp. at 20-21, is simply wrong.

Furthermore, *Safeco* identified three objective indicia for lower courts to apply to assess whether a reading of the FCRA was objectively unreasonable: (1) if a reading of the FCRA "has a foundation in the statutory text," *e.g.*, if the relevant statutory provision is "less-than-pellucid," that fact favors a finding that the defendant acted reasonably and not willfully, *Safeco*, 551 U.S. at 69-70; (2) whether the provision had, at the time of the alleged violation, been interpreted by any binding "court of appeals," *id.* at 70; and (3) whether any "authoritative guidance ha[d] yet come from the FTC," *id.* at 70.   In fact, in *Safeco* itself, the Court held that a "dearth of guidance," along with the FCRA's "less-than-pellucid statutory text," dictated that "Safeco's reading [of the FCRA] was *not objectively unreasonable*, and so *falls well short* of raising the 'unjustifiably high risk' of violating the statute necessary for [even] reckless liability."   *Id.* (emphases added); *accord Straaten v. Shell Oil Prods. Co. LLC*, 2012 U.S. App. LEXIS 7789, at *5 (7th Cir. Ill. Apr. 18, 2012) ("The absence of a statutory or regulatory definition of the phrase 'card number'—and the fact that the four digits Shell exposed on the receipt created no greater risk for its customers than printing the last four digits of the primary account number, means that Shell's decision cannot be called "objectively unreasonable.'").

**B.    The application of *Safeco* to the allegations pled under Count I.**

When following the framework set forth in *Safeco*, it is evident that Plaintiff cannot carry his burden to show a willful violation under Count I.   Notably, Plaintiff disputes *none* of the following: (1) that no decision, whether in this District, the Fourth Circuit, or any other federal or state court nationwide, has ever adopted the interpretation of the FCRA that he advances under § 1681k(a) throughout the history of the statute;[4] (2) that no FTC guidance has ever held that the

---

[4] To the extent that Plaintiff seeks to rely on *Goode* to counter the lack of judicial authority supporting his allegation of willfulness, *see* Mem. Opp. at 26 n. 8, that too is mistaken.   Although, for the reasons set forth above, the decision in *Goode* squarely favors CoreLogic's position, it also was decided years after the alleged violation in this action occurred.   *See* Compl., ¶¶ 21-23.   It is, therefore, not proper to allege willfulness on the basis of *Goode*.   *See, e.g., Murray v. Indymac Bank F.S.B.*, 2007 U.S. Dist. LEXIS

sale of information to a mere reseller of data triggers the requirements of § 1681k(a); (3) that the term "user" is undefined in the FCRA; and (4) that the defined phrase "employment purposes" and the decisions interpreting that phrase militate strongly against his arguments.

Instead, despite all this, Plaintiff somehow argues that the requirements of § 1681k(a) are "manifestly pellucid." Mem. Opp. at 23. This conclusory overstatement is belied by the arguments detailed in Section II, *supra*, which demonstrate that not only is CoreLogic's reading of § 1681k(a) objectively reasonable, it is objectively *correct*. And, based on these facts, in no way can CoreLogic's actions amount to an objectively unreasonable interpretation of § 1681k(a).

### C.      The finding of a lack of any "willful" violation is appropriate at this time.

Plaintiff argues that the resolution of his claim of a willful violation of § 1681k(a) on this motion is premature. Plaintiff contends that "to entertain Defendants' motion would breach the fundamental precepts governing Rule 12(b)(6) practice." Mem. Opp. at 26. In making that argument, Plaintiff fails to address the actual holding of *Safeco*, which discredits any such contention; and he *completely disregards* all of the contrary precedent cited by CoreLogic holding that in cases such as the present, the issue of objective unreasonableness can and should be resolved at the motion to dismiss stage. *E.g., Straaten*, 2012 U.S. App. LEXIS 7789, at *10 ("Plaintiff wraps up her presentation in this court with the assertion that 'the law is settled' that willfulness cannot be decided on summary judgment but must be submitted to a jury . . . . Plaintiff does not mention *Safeco Insurance*, in which the Supreme Court of the United States treated willfulness as a question of law and directed that judgment be entered in a defendant's favor without a trial."); *Long v. Tommy Hilfiger, Inc.*, 2012 U.S. App. LEXIS 1269, at *12 (3d

---

67702, at *29-30 (N.D. Ill. Sept. 13, 2007) ("Murray has not pointed to sufficient evidence that shows that the interpretation of the FCRA *at the time of the mailing of the Letter* was not a reasonable interpretation of the FCRA.") (emphasis added). *Goode* also was a district court decision decided outside of the Fourth Circuit, and therefore it does not meet the standards set forth in *Safeco* to be considered in conjunction with the "objective reasonableness" inquiry. *See Safeco*, 551 U.S. at 70.

Cir. Jan. 24, 2012); *Shlahtichman v. 1-800 Contacts*, 615 F.3d 794, 803-04 (7th Cir. 2010); *Fuges v. Southwest Fin. Servs.*, 2011 U.S. Dist. LEXIS 134779, at *17-18 (E.D. Pa. Nov. 21, 2011); *Simonoff v. Kaplan, Inc.*, 2010 U.S. Dist. LEXIS 125414, *26 (S.D.N.Y. Nov. 29, 2010).

Indeed, *Goode* expressly rejected the very same argument that Plaintiff makes here. Specifically, the court held: "Courts frequently state that willfulness is a question of fact for the jury. However, those cases usually involve questions of fact as to what the defendant knew at the time of the alleged violation. That is not an issue in this case. The issue of willfulness in this case turns on *whether the law was clear* at the time of the alleged violation." 2012 U.S. Dist. LEXIS 39863, at *28 n.10 (emphasis added). Here, at the very least, it is reasonable to construe the requirements of § 1681k(a) to not apply to CoreLogic's transaction with Verifications. Thus, like *Safeco*, the issue is ripe for resolution now absent discovery.[5]

Notwithstanding all of the contrary authority, including *Safeco* itself, in support of his argument Plaintiff simply pastes a large section of the opinion in *Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012). Although the great majority of the opinion is completely irrelevant to this motion, the court in *Domino's*, after noting that the issue of willfulness hinged on the "objective reasonableness" of the position advanced, remarked that the issue could not be decided on a Rule 12(b)(6) motion because "there is no evidence that Domino's actually adopted the interpretation of [the FCRA] that it proposes now." *Id.* at *36. That holding erroneously turns the "objective" inquiry required under *Safeco* into a subjective

---

[5] As detailed in CoreLogic's initial memorandum, in this sense, the inquiry under *Safeco* is highly-analogous to the analysis of whether a state official is subject to qualified immunity from an asserted violation of constitutional rights under 42 U.S.C. § 1983. *See, e.g.*, *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) ("Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). And, in that context, it is settled that the issue of immunity can be decided on a motion to dismiss so that the court is not burdened with a costly and wasteful litigation process. *Hunter v. Bryant*, 502 U.S. 224 (1991); *Walker v. Sopher*, 1998 U.S. App. LEXIS 23712, at *16 (4th Cir. Sept. 23, 1998) ("In sum, the order of the district court denying appellants' motion to dismiss the § 1983 claims based on qualified immunity is reversed."). Plaintiff never addresses this point.

analysis and contradicts the Supreme Court's admonition that "Congress could not have intended [a finding of willfulness] for those who followed an interpretation that could reasonably have found support in the courts, *whatever their subjective intent may have been*." *Safeco*, 551 U.S. at 70 n.20 (emphasis added). *Domino's* also is contrary to the overwhelming majority position reaching the opposite result, *supra*.[6] For all these reasons, Plaintiff's claim of a willful violation of the FCRA under Count I must be dismissed with prejudice.

### D.   Plaintiff's conclusory allegations of willfulness are legally insufficient.

Plaintiff's claim for a "willful" violation of the FCRA fails for yet another reason in that it fails to satisfy the pleading standards of *Iqbal* and *Twombly*. Plaintiff alleges in conclusory fashion that the alleged violation of § 1681k(a)(1) by CoreLogic was "willful." Compl., ¶ 56. Nevertheless, Plaintiff claims he has set forth sufficient facts to plausibly claim an entitlement to substantial punitive damages because he has alleged that: (1) CoreLogic "knew or should have known about its obligations under the FCRA" because these "legal obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission"; (2) CoreLogic had "substantial written materials that apprised" it of its duties under § 1681k(a)(1); and (3) CoreLogic's misconduct was "systemic." (Compl., ¶¶ 42-44, 45). Those allegations are boilerplate and could be (and frequently are) merely copied into the many complaints filed by Plaintiff's counsel without reference to any supporting *facts*. *See, e.g.*, *Henderson v. Verifications, Inc.*, Civ. No. 3:11cv514 (Dkt. No. 20, ¶¶ 40-41, 43) (reciting, verbatim, the same "factual" allegations of willfulness that are pled here). Thus, Plaintiff's contention that he has stated "concrete and detailed" averments of willfulness is sorely lacking. Mem. Opp. at 4.

---

[6] Also, unlike in this case, the court in *Domino's* remarked that the FCRA provision at issue had "a plain and clearly ascertainable meaning" on its face. *Id.* at *37.

Moreover, if Plaintiff seeks to premise the factual sufficiency of his claims of willfulness on these bare allegations, then he has altogether failed to present a plausible case for such relief in light of the complete lack of professed authoritative materials (whether from the FTC or any court) in favor of the position he advances under Count I.   Hence, the conclusory claim of willfulness, which is based on demonstrably wrong and implausible contentions, must be dismissed for this additional reason.  *See, e g., Odor v. Wal-Mart Stores East*, No. 10-287, 2011 U.S. Dist. LEXIS 82571, at *5 (E.D. Ky. July 7, 2011) (dismissing claim for punitive damages because the "Plaintiff fail[ed] to provide any facts to state a plausible claim that Defendant acted with any level of malice or ill will").

## IV.   PLAINTIFF'S FAILURE TO ALLEGE AN INJURY IN FACT FAILS TO SATISFY THE REQUIREMENT OF CONSTITUTIONAL STANDING.

To satisfy Article III's standing requirements, a plaintiff must show that he has suffered "an injury in fact," which is a "'legally protected interest,' in a manner that is both 'concrete and particularized' and 'actual or imminent.'"  *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268 (4th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  It also is settled that this jurisdictional requirement cannot be overcome merely by a statutory remedy.  *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").  Thus, regardless of the remedies available to a plaintiff under the FCRA, the injury in fact requirement remains a prerequisite to a plaintiff's day in federal court.

### A.    Plaintiff fails to allege an injury in fact sufficient to provide standing.

Plaintiff acknowledged in his Complaint that he and his putative class "see[k] only statutory and punitive damages" under Count I.  Compl., ¶ 51; *see also id.* at ¶ 58.  Indeed, Plaintiff's putative class definitions for his § 1681k(a) claim include no element of injury and instead hinge on the mere lack of notice.  Compl., ¶ 47.  The class definition does not account for

the accuracy of the reports, the effect that the information contained in the reports may have had on employment decisions, and/or any other measure of true harm that Plaintiff now contends demonstrates a cognizable injury for purposes of Article III standing. *See id.*

Perhaps recognizing the deficiency in his Complaint, Plaintiff attempts to shift the focus to the actual injury pled in his individual claim in Count III, which is asserted under 15 U.S.C. § 1681e(b). *See* Mem. Opp. at 26-28. That claim rests on entirely different alleged conduct. The fact remains that Plaintiff fails to plead *any* injury arising out of an alleged violation of § 1681k(a), and it is relative to that claim alone that standing must be assessed on this motion. *See, e.g., In re Magnesium Oxide Antitrust Litig.*, 2011 U.S. Dist. LEXIS 121373, at *90 n.22 (D.N.J. Oct. 20, 2011) ("[s]tanding issues are intimately bound up with the elements of the particular claim asserted") (citing *Lujan*, 504 U.S. at 560). In this sense, Plaintiff attempts to, among other things, preserve purported commonality for his *class* claim under Count I by turning a blind eye to any semblance of injury in fact, only now to contend that such injury nonetheless is present by virtue of the entirely-separate, *individual* Count III. This cannot be countenanced.

### B.    Precedent demonstrates that Plaintiff lacks standing.

Plaintiff's failure to allege an injury-in-fact under Count I prevents the exercise of subject matter jurisdiction over that claim. Plaintiff contends, however, that his seeking "statutory damages" satisfies Article III's standing requirements. Mem. Opp. at 26-29. Abundant federal authority, under both the FCRA and similar consumer protection statutes authorizing awards of "statutory damages," affirm that Plaintiff lacks standing to prosecute Count I.

With respect to the FCRA, Plaintiff's lack of any allegation of concrete injury is starkly similar to the allegations in *Robins v. Spokeo, Inc.*, 2011 U.S. Dist. LEXIS 14079 (C.D. Cal. Jan. 27, 2011), in which the plaintiff alleged that the defendant operated a website providing

inaccurate background checks in violation of the FCRA. Although the plaintiff sought statutory damages for a violation of the FCRA, the Court explained that "even when asserting a statutory violation, the plaintiff must allege the Article III minima of injury-in-fact." *Id.* at *4 (internal quotation marks omitted). Because the plaintiff had not alleged that the background checks had resulted in any adverse employment decisions or any other injury, the court dismissed his claims. Thus, in no uncertain terms, the court held that "[m]ere violation of the Fair Credit Reporting Act does not confer Article III standing . . . where no injury in fact is properly pled." *See Robins v. Spokeo, Inc.*, No. 2:10-CV-5306 (C.D. Cal. Sept. 19, 2011), Order Correcting Prior Ruling and Finding Moot Motion for Certification, ECF No. 66.

Other federal decisions addressing similar claims of "statutory damages" outside the FCRA context reinforce Plaintiff's lack of standing here. *See, e.g.*, *Heard v. Bonneville Billing & Collections*, 2000 U.S. App. LEXIS 14625, at *4-5 (10th Cir. June 26, 2000) (plaintiff lacked standing "to invoke the FDCPA" challenging fee splitting, as she had not "alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf."); *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009) (plaintiff lacked standing to assert an ERISA claim, even though "plan fiduciaries have a statutory duty to comply with ERISA," because a plaintiff "must allege some injury or deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement."); *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 595 (10th Cir. 1996) (plaintiffs lacked standing to assert a claim under the Fair Housing Act based on advertising where plaintiffs did not allege that they suffered "any other injury stemming from the advertisements").

By contrast, *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), cited in Plaintiff's memorandum, is inapposite. In *Beaudry*, the court addressed the defendants' alleged

failure to modify their credit reporting systems to account for changes to Tennessee drivers'
licenses.  That oversight allegedly resulted in incorrect credit reporting which suggested that the
putative class of plaintiffs had no relevant credit history.  *Id.* at 703.  Indeed, the plaintiffs in
*Beaudry* pled a negligence claim under the FCRA, contending that "Plaintiff and the Class
Members are now and will continue to suffer irreparable injury from Defendants' unlawful
policies, practices, and procedures."  *See* Compl. at ¶ 102, *Beaudry v. Telecheck Servs., Inc.*, No.
3:07cv842 (M.D. Tenn. Aug. 17, 2007), ECF No. 1.  Thus, unlike here, the plaintiffs pled actual
injury arising out of the conduct for which they also sought FCRA statutory damages.

In short, while Plaintiff characterizes his § 1681k(a) claim as akin to "the salt that
[Defendants] added to his then-existing wounds," *see* Mem. Opp. at 27, case law demonstrates
that the failure to allege any injury in fact (*i.e.*, a "wound") arising from an alleged violation of §
1681k(a) fails to give rise to Article III standing.

<u>CONCLUSION</u>

WHEREFORE, Defendants, CoreLogic, Inc. and CoreLogic National Background Data,
LLC f/k/a National Background Data, LLC, respectfully request that the Court enter an Order:
(1) dismissing Count I of the Complaint, or any other claim that may be pled under § 1681k(a),
with prejudice; and (2) granting CoreLogic any other relief the Court deems appropriate.

**CORELOGIC, INC. and CORELOGIC NATIONAL BACKGROUND DATA, LLC f/k/a NATIONAL BACKGROUND DATA, LLC**


By: ____/s/David N. Anthony_____

David N. Anthony
Virginia State Bar No. 31696
*Counsel for CoreLogic, Inc. and CoreLogic National Background Data, LLC f/k/a National Background Data, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-5410
Facsimile:  (804) 698-5118
Email: david.anthony@troutmansanders.com

Alan D. Wingfield
Virginia State Bar No. 27489
*Counsel for CoreLogic, Inc. and CoreLogic National Background Data, LLC f/k/a National Background Data, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1350
Facsimile:  (804) 698-5172
Email: alan.wingfield@troutmansanders.com

Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for CoreLogic, Inc. and CoreLogic National Background Data, LLC f/k/a National Background Data, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1254
Facsimile:  (804) 698-6013
Email: tim.stgeorge@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June 2012, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

Leonard A. Bennett, Esq.
Susan M. Rotkis, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA  23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
Email:  lenbennett@cox.net
*Counsel for Plaintiff*

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA  23803
Telephone:  (804) 861-6000
Facsimile:  (804) 861-3362
Email: dale@pittmanlawoffice.com
*Counsel for Plaintiff*

David A Searles, Esq.
Donovan Searles LLC
1845 Walnut St., Ste 1100
Philadelphia, PA  19103
Telephone: 215-732-6067
Facsimile: 215-732-8060
*Counsel for Plaintiff*

James Arthur Francis, Esq.
Francis & Mailman PC
Land Title Building
100 S Broad Street, 19th Floor
Philadelphia, PA  19110
Telephone: 215-735-8600
Facsimile: 215-940-8000
Email: jfrancis@consumerlawfirm.com
*Counsel for Plaintiff*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for CoreLogic, Inc. and CoreLogic*
*National Background Data, LLC f/k/a National*
*Background Data, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-5410
Facsimile:  (804) 698-5118
Email: david.anthony@troutmansanders.com

2162334v1