**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**TYRONE HENDERSON and**
**JAMES O. HINES, JR.,**
**on behalf of themselves and others**
**similarly situated,**

        **Plaintiff,**

**v.**                               **Case 3:12-cv-00097-REP**

**CORELOGIC, INC.,**

**and**

**CORELOGIC NATIONAL BACKGROUND DATA, LLC,**
**f/k/a National Background Data, LLC,**

        **Defendants.**

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

      COME NOW, the Plaintiffs, TYRONE HENDERSON and JAMES O. HINES, JR., on

behalf of themselves and all similarly situated individuals and for their Amended Class Action

Complaint, they state as follows:

**INTRODUCTION**

      1.      Tyrone Henderson and James O. Hines, Jr. ("Plaintiffs") bring this class action

against Defendants to obtain relief for themselves and the class they propose to represent for

violations of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*.

      2.      Defendants operate as a unified consumer reporting agency that compiles and

maintains files on consumers on a nationwide basis.  Defendants maintain an extensive database

of public records regarding consumers. They then sell consumer reports generated from the database and furnish these consumer reports to other reseller consumer reporting agencies who rebrand them and sell them to the potential employers for the Plaintiffs and the putative class members. Defendants and the reseller never reveal to the consumer from where this original report was generated and sold.

3.      Plaintiffs allege an individual claim under 15 U.S.C. § 1681e(b), which required that Defendants use "reasonable procedures to assure maximum possible accuracy" in the publication of Plaintiffs' consumer report.

4.      Mr. Henderson had received a tentative job offer conditioned upon his employment background check. The background check that Defendants then sold to the employer was grossly inaccurate – most significantly because it reported that the Plaintiff had been convicted of a felony in Westmoreland County, Pennsylvania. Defendants had mixed the criminal history of a stranger with the same first and last name into the Plaintiff Henderson's report, even though that person shared nothing else in common. Mr. Henderson did not then get the job.

5.      Mr. Hines, in the course of applying for a position as a physical therapy assistant, was the subject of a background check by Defendants that inaccurately identified him as a "Registered Sex Offender" in the state of Indiana, even though he has never been to that state. Mr. Hines was not approved for hire.

6.      Plaintiffs also allege a class claim under 15 U.S.C. § 1681k because Defendants did not provide Plaintiffs and other similarly situated consumers timely and lawful notice that it was furnishing an employment purposed consumer report at the time it did so. This important

2

requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the reporting agency to obtain and as appropriate correct information in the furnished report.  It also was intended to alert the consumer to the employer's use of the report to provide them the opportunity to address any concerns or derogatory history in the report directly with the employer.  Defendants' failure to comply with these long standing requirements denied the Plaintiffs and each putative class member these important rights.

7.      Plaintiffs also bring a class claim under 15 U.S.C. § 1681g.  The Plaintiffs requested their consumer disclosures from the Defendants and a list of all inquiries made to the Defendants for their reports.  The Defendants do not reveal the inquiries for reports they sell to third party reseller agencies.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly do business in the district and division.

9.      Plaintiff Henderson is a citizen of Richmond, Virginia and maintains all of the documents relevant to this dispute at his home in Richmond, Virginia.  Plaintiff Hines is a resident of Hayes, Virginia.

## PARTIES

10.     Plaintiffs are each a natural person and a "consumer" as protected and governed by the FCRA.

11.     Defendant CoreLogic, Inc. is the parent company of CoreLogic National

3

Background Data, LLC ("NBD").   It holds itself out and describes its business as "a leading provider of consumer, financial and property information, analytics and services[.] … CoreLogic has built the largest U.S. real estate, mortgage application, fraud, and loan performance databases and is a recognized leading provider of mortgage and automotive credit reporting, property tax, valuation, flood determination, and geospatial analytics and services. More than one million users rely on CoreLogic to assess risk, support underwriting, investment and marketing decisions, prevent fraud, and improve business performance in their daily operations[.]"

12.     According to Defendants, "National Background Data by CoreLogic is the leading wholesale criminal data provider to the background screening industry. National Background Data is part of CoreLogic. CoreLogic brings you powerful new capabilities to assess risk from every angle - and realize dynamic insights you need to optimize business performance."

13.     According to Defendants, "Hundreds of screening companies count on [CoreLogic and NBD] for unmatched quality data and superior service to drive risk down and income up. With the largest privately held criminal records database, we provide efficient and economical access to multi-jurisdictional data. … Whether the goal is to provide an employment screening package or to screen volunteers, we partner with our clients to provide a high quality, low cost solution tailored to meet the needs of the end client."

14.     CoreLogic and NBD sell criminal and employment-purposed background checks solely on a wholesale basis.  Consumers do not typically even know that an employment report originated from Defendants.  They "work in the background to deliver the industry-leading

4

background information search solutions [the employer clients of reseller background check companies] want [.]"  According to Defendants, their "business is built on two principles. First, to provide comprehensive background data and searches. Second, to join forces with background screening companies to enable them to provide optimum value to their clients while growing their own businesses."   NBD sells "exclusively through a network of screening companies never direct to the client."

15.    According to Defendants, "National Background Data by CoreLogic is a consumer reporting agency that assembles and evaluates consumer information and provides consumer reports to third parties for the purpose of residential screening, employment screening and/or other purposes as permitted under federal, state and local laws."

16.    CoreLogic is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

17.    NBD is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties. CoreLogic controls the acts and practices of itself and of NBD.

18.    Defendants disburse consumer reports to third parties under contract for monetary compensation during the class period and currently.

19.    Defendants treat and operate NBD as a fully integrated division of CoreLogic and not as a separate or independent business entity.

20.    CoreLogic and NBD operate as a nationwide consumer reporting agency as

5

governed by the FCRA.

21.     Defendants permit the flow and exchange of consumer data from the various consumer reporting databases controlled, operated, maintained or owned by CoreLogic and its various subsidiaries as if such exchanges were other than the furnishing of a consumer report to a third party.   That is, Defendants exchange otherwise private and protected consumer data between one another because they operate as an indivisible and single consumer reporting agency.

22.     Third party Verifications, Inc. ("Verifications") also operates as a "consumer reporting agency" as defined and governed by the FCRA.  For purposes of this action, it operates as a "reseller" of consumer report data.

<b><u>FACTUAL ALLEGATIONS</u></b>

**A.     <u>Plaintiff Tyrone Henderson</u>**

23.     In or around the months of August and September 2009, Plaintiff Henderson applied for a job with Interstate Brands Corporation, subject to a background check being conducted.

24.     On or about November 5, 2009, Interstate Brands Corporation requested a background check from Verifications.

25.     Immediately thereafter and in accordance with Defendants' standard procedures, Verifications ordered a report the "CoreLogic report") from Defendants, which they furnished.

26.     The CoreLogic report was a "consumer report" governed and as defined by the FCRA.

27.     Plaintiff Henderson did not learn that Defendants had furnished a report regarding

6

him until late 2011, while litigating a collateral case against Verifications.

28.     Defendants returned several "hits" attributed to the Plaintiff, including purported criminal conviction public records from Westmoreland County, Pennsylvania.

29.     The Westmoreland County records did not belong to the Plaintiff Henderson. They regarded an unrelated man with a similar name, but entirely different social security number.

30.     As soon as Verifications received the CoreLogic report, it placed same within an online consumer report regarding Mr. Henderson provided to the Plaintiff's prospective employer.  While this report did not contain the details of the Pennsylvania convictions, it did report that the Plaintiff's history had come back with these "hits" in a search of his national criminal background.  This report was furnished immediately to the employer who by contract had access to (and did review) this report even before Defendants had completed additional processes to obtain confirming data from another source.

31.     Defendants' failure to follow reasonable procedures to assure that their report regarding Mr. Henderson did not include information regarding a different person was a substantial factor in the rejection of Plaintiff's employment application and other related actual harm he suffered.  As a result of the consumer report, Interstate Brands Corporation withdrew its conditional offer of employment.

32.     Later, after losing the Interstate Brands Corporation job, the Plaintiff was able to obtain – just by asking the court clerk directly – a copy of the actual Westmoreland County criminal records.

33.     The Pennsylvania records from the Court itself confirm that they do not belong to

7

the Plaintiff and do not match his social security number.

34.     In creating and furnishing the Plaintiff's consumer report, Defendants failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. For example, they allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Plaintiff's consumer report.

35.     Plaintiff never received a letter or any other communication from CoreLogic, NBD or any other CoreLogic entity "at the time" the CoreLogic report was furnished.

36.     Plaintiff also never received a letter or any other communication from Verifications "at the time" a report was then furnished to Interstate Brands Corporation.

37.     In 2011, after learning of the possible involvement of Defendants in the Verifications report, Plaintiff wrote to Defendants and requested a full copy of his file, including all inquiries made to them and he disputed the inaccurate Westmoreland County records.

38.     Defendants responded to Plaintiff's dispute and for their results of the investigation they claimed to have removed the inaccurate items.

39.     In Defendants' response and notice to the Plaintiff after his request for his full file, Defendant NBD did not respond or provide any response.

40.     In Defendants' response and notice to the Plaintiff after his request for his full file, Defendants did not identify any of the inquiries made or reports furnished, including the Verifications report.

41.     In fact, after the events alleged herein, the records in Pennsylvania clearly showed that the social security number in the public records did not match that of the Plaintiff. Had

Defendants actually contacted the governmental source, it would have seen this obvious discrepancy.

42.     Despite providing a report for employment purposes containing public record information likely to have an adverse affect upon their ability to obtain or maintain employment, Defendants failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person(s) to whom such information was being reported.

**B.     Plaintiff James O. Hines, Jr.**

43.     Plaintiff James O. Hines, Jr. is a 41 year old married father of nine children, and resides in Hayes, Virginia.  He has over 20 years of experience as a physical therapist in Virginia, and has been nominated for and selected for employer awards for excellent service in his field

44.     In or around May, 2011, Plaintiff Hines was employed by a homecare agency in Hampton, Virginia as a physical therapist.

45.     Needing to increase his income to meet his family's financial obligations, Plaintiff applied for a second job, also as a physical therapy assistant, with CareSouth Homecare Professionals in Newport News, Virginia.

46.     In connection with Plaintiff's application for employment, CareSouth requested and did purchase from ADP Screening and Selection Services ("ADP") a consumer report regarding Mr. Hines, on or about June 1, 2011.

47.     ADP purchased the information included in the consumer report from Defendants, directly from NBD.

48.     The consumer report contained inaccurate information concerning Mr. Hines.  In particular, the consumer report contained five pages that identified Plaintiff as a "Registered Sex Offender" in Indiana.

49.     Plaintiff has never been to Indiana.

50.     Plaintiff has never been a sex offender, registered or otherwise.

51.     The report purchased from Defendants by ADP and re-sold by ADP to CareSouth was furnished for employment purposes.

52.     Plaintiff did not receive a letter or any other communication from CoreLogic, NBD or any other CoreLogic entity "at the time" the report was furnished.

53.     Plaintiff also never received a letter or any other communication from ADP "at the time" a report was furnished to CareSouth.

54.     Plaintiff was notified by CareSouth of the derogatory public record information supplied to CareSouth by ADP.

55.     Plaintiff, on or about June 6, 2011, disputed the accuracy of the information that ADP had sold to CareSouth.

56.     On or about June 30, 2011, ADP wrote to Plaintiff and notified him that (a) ADP submitted the dispute to NBD; (b) that NBD had notified ADP that a dispute reinvestigation was complete; and (c) that NBD had notified ADP that "the disputed information has been verified."

57.     The June 30, 2011 letter, sent a month after NBD sold the consumer report to ADP, was not sent to Plaintiff "at the time" that NBD furnished and sold the report containing the derogatory information to ADP.

58.     As a result of the consumer report, CareSouth refused to hire or approve Mr.

10

Hines for hire.

**C.**     **All Plaintiffs**

59.     On information and belief, Plaintiffs allege that Defendants did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (*e.g.*, the Court clerk) immediately before furnishing a report which includes such information. Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

60.     Defendants knew or should have known about their legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

61.     Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

62.     Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiffs and other members of the class of their rights under the FCRA.

63.     Plaintiffs allege that Defendants' conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

**CLAIMS FOR RELIEF**

**COUNT I - VIOLATION OF THE FCRA § 1681k(a)(1)**
**(CLASS ACTION)**

64.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

65.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "1681k Class") defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a report sold to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d) within five years next preceding the filing of this action and during its pendency, and (e) to whom Defendants did not place in the United States mail postage pre-paid, on the day they furnished any part of the report, a written notice that they were furnishing the subject report and containing the name of the person that was to receive the report.  Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

66.     Plaintiff Henderson also proposes an alternate subclass limited to reports sold to Verifications, Inc.  (the "1681k Verifications Subclass") defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a report sold to Verifications, (b) that was furnished for an employment purpose, (c) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (*i.e.*, information from a non-governmental database), (d) within five years next preceding the filing of this action and during its pendency, and (e) to whom Defendants did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.  Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

67.     Plaintiff Hines also proposes an alternate subclass limited to reports sold to ADP (the "1681k ADP Subclass") defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a report sold to ADP, (b) that was furnished for an employment purpose, (c) that contained

at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (*i.e.*, information from a non-governmental database), (d) within five years next preceding the filing of this action and during its pendency, and (e) to whom Defendants did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.  Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

68.    **Numerosity.  FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

69.    **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class. Without limitation, the total focus of the litigation will be Defendants' uniform conduct and procedures, whether Defendants sent the required notices, when they did so and whether Defendants acted willfully in their failure to design and implement procedures to assure compliant delivery and/or timing of these notices.   Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

70.    **Typicality.  FED. R. CIV. P. 23(a)(3)**.  Plaintiffs' claims are typical of the claims of each Class member.   Plaintiffs seek only statutory and punitive damages. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

71.    **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the

members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.  Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

72.    **Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

73.    **Injunctive Relief Appropriate for the Class.  FED. R. CIV. P. 23(b)(2).**  Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members.

74.    Defendants' failure to timely provide the required FCRA notices to the Plaintiffs

and other members of the Class violated 15 U.S.C. § 1681k(a)(1).

75.     The conduct, action, and inaction of Defendants were willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76.     Plaintiffs and other members of the Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

77.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and to each Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys fees and costs pursuant to § 1681n.

## COUNT II - VIOLATION OF THE FCRA § 1681g(a)
### (CLASS ACTION)

78.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

79.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action for themselves and on behalf of a class (the "1681g Class") defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who requested their consumer file from CoreLogic, NDB or any other CoreLogic entity, (b) within five years next preceding the filing of this action and during its pendency, and (c) about whom a NBD report had been furnished to a third party reseller (1) for employment purposes, during the 2-year period preceding the date on which the consumer's request for the report made, or (2) for any other purpose, during the 1-year period preceding the date on which the request was made.   Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

80.     **Numerosity.  FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

81.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. Without limitation, the total focus of the litigation will be Defendants' uniform conduct and procedures, whether Defendants disclosed the NBD inquiries in their consumer disclosures, whether they were required to do so, and whether Defendants acted willfully in their failure to design and implement procedures to assure compliant delivery and/or timing of this information. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. §1681n is a common question.

82.     **Typicality.  FED. R. CIV. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of each Class member.  Plaintiffs seek only statutory and punitive damages. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

83.     **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.  Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

84.     **Superiority.  FED. R. CIV. P. 23(b)(3).**   Questions of law and fact common to

16

the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.   Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

85.     **Injunctive Relief Appropriate for the Class.  FED. R. CIV. P. 23(b)(2).**  Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members.

86.     Defendants' failure to disclose the NBD and ADP inquiries and reports furnished to other resellers violated 15 U.S.C. § 1681g(a)(3) as to the Plaintiffs and other members of the Section 1681g class.

87.     The conduct, action, and inaction of Defendants were willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.

88.     Plaintiffs and other members of the Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and to each Section 1681g Class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys fees and costs pursuant to § 1681n.

## COUNT III - FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (Individual Claim of Plaintiff Henderson)

90.     Plaintiff Henderson reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

91.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding the Plaintiff.

92.     As a result of this conduct by the Defendants, Plaintiff Henderson suffered actual damages, including without limitation, by example only and as described herein on his behalf by counsel:   loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

93.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n.   In the alternative, the Defendants were negligent, entitling Plaintiff Henderson to recover under 15 U.S.C. § 1681o.

94.     Plaintiff Henderson is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT IV - FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (Individual Claim of Plaintiff Hines)

95.     Plaintiff Hines reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

96.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding the Plaintiff.

97.     As a result of this conduct by the Defendants, Plaintiff Hines suffered actual damages, including without limitation, by example only and as described herein on his behalf by counsel:   loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

98.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n.   In the alternative, the Defendants were negligent, entitling Plaintiff Hines to recover under 15 U.S.C. § 1681o.

99.     Plaintiff Hines is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V - FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### (Individual Claim of Plaintiff Hines)

100.     Plaintiff Hines reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

101.     Defendants violated 15 U.S.C. § 1681i by failing to comply with their duties to reinvestigate disputed information as to Plaintiff Hines.

102.     As a result of this conduct by the Defendants, Plaintiff Hines suffered actual damages, including without limitation, by example only and as described herein on his behalf by counsel:   loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

103.     Defendants' violations of 15 U.S.C. § 1681i were willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendants were negligent, entitling Plaintiff Hines to recover under 15 U.S.C. § 1681o.

104.     Plaintiff Hines is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members pray for relief as follows:

a.     That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

b.     That judgment be entered for Plaintiffs individually against Defendants for actual and/or statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681e(b) and

20

1681i, pursuant to 15 U.S.C. §§ 1681n and 1681o;

      c.     That judgment be entered for the Class against Defendants for statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681k(a) and 1681g(a) pursuant to 15 U.S.C. § 1681n.

      d.     That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

      e.     That the Court grant such other and further relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

                  **TYRONE HENDERSON and**
                  **JAMES O. HINES, JR.,**
                  **For themselves and on behalf of all**
                  **similarly situated individuals.**

By:     /s/_____
                  Dale W. Pittman
                  VSB #15673
                  Attorney for Plaintiff
                  The Law Office of Dale W. Pittman, P.C.
                  112-A W. Tabb Street
                  Petersburg, VA 23803-3212
                  Telephone: (804) 861-6000
                  Fax: (804) 861-3368
                  Email: dale@pittmanlawoffice.com

                  Susan M. Rotkis
                  VSB 40693
                  CONSUMER LITIGATION
                  ASSOCIATES, P.C.
                  763 J. Clyde Morris Boulevard, Suite 1-A
                  Newport News, Virginia 23601
                  (757) 930-3660 - Telephone
                  (757) 930-3662 – Facsimile
                  E-mail: srotkis@clalegal.com

21

Leonard A. Bennett
VSB #37523
Attorney for Plaintiff
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com

David A Searles
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600 - Telephone
(215) 940-8000 - Facsimile
Email: dsearles@consumerlawfirm.com

James Arthur Francis
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600 - Telephone
(215) 940-8000 - Facsimile
Email: jfrancis@consumerlawfirm.com

Janelle Elene Mason
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
(703) 273-7770 - Telephone
(888) 892-3512 - Facsimile
Email: janelle@clalegal.com

Matthew James Erausquin
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
(703) 273-6080 - Telephone
(888) 892-3512 - Facsimile
Email: matt@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
Email: david.anthony@troutmansanders.com

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
Email: john.lynch@troutmansanders.com

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23219
Email: tim.stgeorge@troutmansanders.com

      /s/                         
Dale W. Pittman
VSB #15673
Attorney for Plaintiff
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com