UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, *et al.*

    Plaintiffs,

v.                                                    Civil Action No. 3:12cv97 (REP)

CORELOGIC NATIONAL BACKGROUND DATA, LLC

    Defendant.

## DECLARATION OF LINDA WATTS

I, Linda Watts, pursuant to 28 U.S.C. § 1746, declare and swear as follows:

1. I am over the age of 18 and competent to give this Declaration. I am employed by CoreLogic National Background Data, LLC ("NBD"), where I am the Operations Manager.

2. NBD is a wholly-owned subsidiary of CoreLogic, Inc.

3. NBD is a successor to National Background Data, LLC.

4. In my capacity as Operations Manager I oversee the processes by which NBD contractually engages and permits third-party background screening companies to access the public-record information that is stored by CoreLogic SafeRent, LLC ("SafeRent"). I also have an understanding of the training provided by NBD to its customers to both search the relevant database and to understand the results of such searches. Further, I oversee the process by which NBD responds to consumer disputes and file requests.

5. The facts set forth herein are based upon my personal knowledge and review of the records of NBD, and if I were called upon to testify to them, I could and would competently do so.

6. NBD is a wholesale criminal data provider to the background screening industry. Among other business activities, NBD sells information to entities that have been engaged by

EXHIBIT B

employers to provide criminal background screenings. NBD has no direct contact with those employers, which are instead clients of those intermediary consumer reporting agencies.

7. ███████████████████████████████████████████. Based on my conversations with those customers and my processing of consumer disputes and requests for information arising out of those customer's background screenings for employment purposes, I am aware that NBD's customer's clients consist of employers in a wide variety of industries, from healthcare to bakeries, in a wide variety of jobs ranging from entry level manual labor positions to executives.

8. Based on my conversations with those customers and my processing of consumer disputes and requests for information arising out of those background screenings for employment purposes, I am aware that NBD's customers procure search results in connection with their preparation of background screening reports for individuals that are both seeking employment with a company for the first time, as well as for those individuals that are currently employed by the entity requesting the report.

9. NBD does not know the identity of the consumer of interest to NBD's customers. Instead, NBD permits its customers to access public record information, and those customers select the criteria by which they desire to gather information from the Multistate Database. Once such search criteria are submitted, NBD returns all of the records in the Multistate Database responsive to that query.

10. Like all of NBD's customers, ADP Screening and Selection Services ("ADP"), Verifications, Inc. ("Verifications") and HR Plus, Inc. ("HR Plus") could generate reports from the Multistate Database by electronically submitting their search criteria.

11. Certain information is not made known to NBD by its customers as part of the search query process, nor is such information contained in NBD's records.

12. NBD requires that its customers certify that they have a permissible purpose for seeking criminal record information, which can include an "employment purpose." However, NBD is not informed of the specific "employment purpose" behind the request, such as whether the background screening is for the purpose of evaluating a prospective employee, or rather for an employment purpose relative to a current employee (*e.g.*, retention, promotion, evaluation, licensure, etc.).

13. For criminal record searches, NBD is not made aware of the state in which the consumer in question is seeking employment.

14. NBD is not made aware of the credentials or employment qualifications of the consumer that is the subject of the customer's query.

15. NBD is not made aware of the type of employment position sought and/or currently held by the consumer that is the subject of the customer's query.

16. NBD is not made aware of what information is ultimately transmitted by its customer to the employer. Based on my conversations with NBD's customers and review of certain background screening reports for employment purposes that were transmitted by those customers to employers, I am aware that certain of NBD's customers use the data gathered from NBD only as an initial investigatory tool to begin their search process. NBD's contracts also consistently instruct its customers that, due to the wholesale nature of the data being provided by NBD, additional filtering by the customer is both necessary and appropriate, including to eliminate "false positive" results.

17. NBD is not made aware of the criteria used by the employer(s) to assess the import of any criminal records returned. Nor does NBD have any records reflecting any instances where its customers may have made an employment-related decision for the consumer that was the ultimate subject of NBD's customer's search query.

18. In my capacity as Operations Manager, I am familiar with NBD's contractual relationship with Deverus.

19. Like all of NBD's customers, Deverus was trained on the nature of the search results that are returned by NBD – *i.e.*, that the results reflect an accurate return of data matching the customer's search criteria and not a report on a specific individual. Additionally, consistent with NBD's established search and retrieval practices, Deverus received records that matched exactly to its search queries; the results were not linked to a specific consumer.

20. I am also familiar with the terms of the contract between NBD and Deverus that was in effect in and around December 2010. In that contract, Deverus was instructed that further filtering and matching of the results returned would be required to eliminate any "false positives" due to the wholesale nature of the records that are returned by NBD.

21. I my capacity as Operations Manager, I am familiar with litigation involving NBD, including the instances where NBD is asked to produce documents or provide testimony as a third-party to a pending lawsuit. I have reviewed the business records of NBD and have not located any instance where NBD was asked to provide any documents or testimony in relation to the civil action captioned *Farmer v. The Phillips Agency, Inc.*, Civil Action No. 2:11cv89, which was filed in the United States District Court for the Northern District of Georgia.

22. I am voluntarily making this declaration of my own free will. I declare under penalty of perjury that the foregoing is true.

DATED: February 7, 2014                    _____
                                                                     Linda Watts