

JAN 2 7 2016

CLERK US DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

TYRONE HENDERSON, <u>et al.</u>,

     Plaintiffs,

v.                            Civil Action No.: 3:12CV97

CORELOGIC NATIONAL
BACKGROUND DATA, LLC,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant National Background Data, LLC's ("NBD") MOTION TO STRIKE DECLARATIONS OF McGLADREY, LLP (ECF No. 220). For the reasons set forth herein, NBD's motion will be denied.

## BACKGROUND

### A. Procedural History

On July 16, 2015, Plaintiffs Tyrone Henderson ("Henderson") and James Hines ("Hines") filed a second amended class action complaint on behalf of themselves and all others similarly situated, alleging that NBD had violated the Fair Credit Reporting Act ("FCRA"). (Second Amended Complaint (ECF No. 189) (hereafter "SAC")). The SAC alleges two Counts under the FCRA. Count One alleges, on behalf of the class, that NBD violated the FCRA by failing to send notices to consumers and to "maintain

strict procedures" to ensure that the criminal records it provided to its customers were "complete and up to date," in violation of 15 U.S.C § 1681k(a).   On August 25, 2015, Plaintiffs filed a renewed motion for class certification, seeking to certify the following class:

> All natural persons residing in the United States who (a) were the subject of a report sold by NBD to Verifications, ADP or HR Plus, (b) where NBD's "Results Returned" database indicates that it was furnished for an employment purpose, (c) where NBD's "Results Returned" database showed that the report contained at least one adverse criminal record "hit," (d) within five years next preceding the filing of this action and during its pendency.

(ECF No. 196).   Count Two, an individual claim on behalf of Henderson and Hines, alleges that NBD failed to use reasonable procedures to assure maximum accuracy of its reports, in violation of U.S.C. § 1681e(b).

The Court entered its standard discovery order on May 16, 2012.   (ECF No. 14).   On August 13, 2013, the Court entered an Agreed Order specifically pertaining to the discovery of NBD's "Results Returned" database.   That database contains:   (1) the search queries submitted by NBD's customers during the pertinent time period; and (2) the records NBD returned in response to those search queries.   (ECF No. 49).   The Agreed Order provided that NBD would make a mirror image copy of the database, and that the copy would be delivered to the offices of McGladrey, LLP ("McGladrey") for safekeeping.   Id. ¶ 1.   At NBD's request,

2

the Agreed Order contained strict security protocols governing McGladrey's access to the database, and provided that the physical server containing the database would remain at McGladrey's office.   Id. ¶¶ 2-10.   At the direction of Plaintiffs' counsel, McGladrey performed searches of the database to determine its contents.

## B. The McGladrey Declarations

In support of their motion for class certification, Plaintiffs have included the declarations of two McGladrey employees, Thomas Burtner ("Burtner") and Frank Barkan ("Barkan").  (ECF Nos. 197-7, 197-8).  Plaintiffs also included Burtner's declaration in support of their Memorandum in Opposition to Defendant's Motion for Summary Judgment.  (ECF No. 205).   Burtner's declaration consists of a very basic factual summary of the relevant contents of NBD's Results Returned database.   For example, Burtner's declaration states that 7,354,662 searches were performed during the class period for which the purchaser indicated that the search was for an "employment purpose." (Burtner Dec. ¶ 9).  Barkan's declaration adds that, based on the contents of the Results Returned database and his previous experience as a class administrator in this and other similar cases, the individuals who compose the proposed class could be identified without much difficulty.

(Barkan Dec. ¶ 7).   Plaintiffs rely on these declarations primarily to show that the proposed class is ascertainable.

Pursuant to Fed. R. Civ. P. 37(c), NBD has filed a motion to strike the declarations of both Burtner and Barkan (collectively, "the McGladrey declarations").   (ECF No. 220). NBD argues that the McGladrey declarations should be stricken because Plaintiffs did not timely disclose Burtner and Barkan as expert witnesses, in accordance with the Court's Order setting the final deadlines for expert disclosures (ECF No. 56) and Fed. R. Civ. P. 26(a)(2).   (Defendant's Memorandum in Support of Motion to Strike Declarations of McGladrey, LLP ("Def. Mem.") (ECF No. 221)).   Specifically, NBD asserts that Burtner and Barkan should be classified as expert witnesses because they: (1) relied on "technical" and "specialized" knowledge to analyze the contents of NBD's database; and (2) lack "true" personal knowledge of NBD's database.   Id.   Plaintiffs respond that Burkan and Burtner are lay witnesses, not expert witnesses, and were therefore properly and timely disclosed under Fed. R. Civ. P. 26(a)(1).   (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Strike Declarations of McGladrey, LLP ("Pl. Mem. in Opp.") (ECF No. 227)).   The motion is now ripe for review.

## DISCUSSION

### A. Legal Framework

Admission of lay testimony is governed by Fed. R. Evid. 701, which provides that lay witness testimony is limited to those opinions or inferences that are: "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Advisory Committee's notes add that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 Advisory Committee's Note (2000).

The Fourth Circuit has noted that, "because Rule 701 'does not distinguish between expert and lay <u>witnesses</u>, but rather between expert and lay <u>testimony</u>'...the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 'is a fine one,'" and "not easy to draw." <u>United States v. Perkins</u>, 470 F.3d 150, 154-155 (4th Cir. 2006) (internal citations omitted; emphasis in original). A corollary of this subtle distinction is that, even though a witness may <u>possess</u> specialized education, training, or experience, that experience does not automatically bring his testimony within the "expert"

purview of Fed. R. Evid. 702.   Rather, a witness who could potentially qualify as an expert may still testify as a lay witness if the proffered testimony is formed "on the basis of relevant historical or narrative facts that the witness has perceived."   <u>Certain   Underwriters   at   Lloyd's,   London   v.</u> <u>Sinkovich</u>, 232 F.3d 200, 203 (4th Cir. 2000) (internal quotation marks omitted).

Of course, "[l]ay opinion testimony <u>must</u> be based on personal knowledge."[1]   <u>United States v. Johnson</u>, 617 F.3d 286, 292 (4th Cir. 2010).   Subparagraph (a) of Rule 701 restricts lay witness testimony to that "based on the person's reasoning and opinions about witnessed events."   <u>United States v. Offill</u>, 666 F.3d 168, 177 (4th Cir. 2011).   However, "courts have admitted lay opinion testimony under Rule 701 that goes well beyond the classic confines of physical perception, and which requires the exercise of judgment solidly grounded in personal knowledge." <u>King v. Rumsfeld</u>, 328 F.3d 145, 158 (4th Cir. 2003) (Gregory, J., dissenting) (citations omitted).

Additionally,   courts   have   consistently   distinguished between testimony requiring "specialized knowledge" within the purview of Rule 702, and "particularized knowledge that the

---

[1] Affidavits offered in support of, or in opposition to, a motion for class certification are, like affidavits offered in support of summary judgment, subject to the requirement of personal knowledge, for the reasons set forth in the Court's opinion in <u>Soutter v. Equifax Info. Servs.</u>, 299 F.R.D. 126 (E.D. Va. 2014).

witness ha[s] by virtue of his position," which is a permissible foundation for lay testimony. United States v. Chapman, 209 F. App'x 253, 265 (4th Cir. 2006) (citing United States v. Ayala-Pizarro, 407 F.3d 25, 28 (1st Cir. 2005) (internal quotation marks and alteration omitted)); see also United States v. Roe, 606 F.3d 180, 185-86 (4th Cir. 2010) (allowing a police sergeant to testify as a lay witness about the requirements for obtaining particular types of handgun permits and the privileges conferred by those permits, because that knowledge "was not 'specialized knowledge' in the Rule 702 sense"); Buckman v. Bombardier Corp., 893 F. Supp. 546, 561 (E.D.N.C. 1995) (quoting Burlington N.R. Co. v. Nebraska, 802 F.2d 994 (8th Cir. 1986)) (allowing employees of manufacturer of recreational watercraft to offer lay witness testimony concerning the "operational characteristics, engineering, and the effects of lack of maintenance" on the product at issue, because "personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony."). Therefore, testimony may qualify as lay witness testimony even where the subject matter is "specialized" or "technical," as long as the testimony: (1) is based on the layperson's personal knowledge, typically in the form of industry experience; and (2) "results from a process of

reasoning familiar in everyday life." Fed. R. Evid. 701
Advisory Committee's Notes (2000); see also Buckman, 893 F.
Supp. 546.

## B. The Burtner Declaration

NBD argues that Burtner is an expert witness because
Burtner used "specialized expertise in analyzing data and
writing '[Standard Query Language] select statements,'" and
"engaged in data analytics and data analysis." (Def. Mem. at
4). Specifically, NBD states that Burtner is an undisclosed
expert because he "develop[ed] and wr[ote] codes...to search the
SQL server database," and because he has no "other" personal
knowledge of NBD's database outside the context of this
litigation. (Def. Mem. at 4). Plaintiffs respond that
Burtner's declaration constitutes lay testimony because Burtner
did nothing more than "read through the Results Returned
database and summarize[] its contents to Plaintiffs' counsel."
(Pl. Mem. in Opp. at 4). That is clearly correct.

First, Burtner's declaration is based on sufficient
personal knowledge. There is no dispute that Burtner, at
Plaintiffs' counsel's direction, personally conducted searches
of the Results Returned database. As NBD itself submits,
"'personal knowledge' means 'knowledge of a fact which a person
has himself gained through his own senses and not from others or
information supplied by others.'" (Def. Reply at 5 (citing

United States v. Johnson, 2008 U.S. Dist. LEXIS 38531, at *8 n.1 (W.D. Va. May 12, 2008)).   Here, Burtner actually examined the Results Returned database himself, and thus gained his understanding of the data therein "through his own senses." NBD's protests that Burtner lacks "true" personal knowledge because he was unfamiliar with NBD's database prior to this litigation has no foundation in either the Federal Rules of Evidence or the interpreting jurisprudence.    Therefore, Burtner's examination of the Results Returned database satisfies the personal knowledge requirement of Rule 701.

Second, Burtner's declaration contains nothing more than a very simple summary of the relevant contents of the Results Returned database, consisting of plainly stated and discrete numerical facts well within the grasp of the average juror.   For example, Burtner's declaration provides that "the Request Data contained 9,729,031 rows indicating that at least this number of reports was sold to CoreLogic's customers during the time period spanning 2007 through 2013.   The Request Data only contained rows where a criminal record 'hit' was generated."   (Burtner. Dec. ¶ 8).   A witness who does nothing more than review and summarize data in a computer database is a lay witness, not an expert.   See, e.g., United States v. Dish Network, LLC, 2015 WL 4635012, at *4 (C.D. Ill. Aug. 4, 2015); United States v. Little, 2005 WL 2334711, at *7 (E.D. Cal. Sept. 23, 2005).

Details such as the number of criminal record "hits" returned in response to a particular search query and the number of reports sold to a particular customer are facts "generally understood by the lay public without the help of an expert's specialized knowledge." Dish Network, 2015 WL 4635012, at *7.

Although Burtner used specialized knowledge of basic computer programming to input his search requests in the format that was necessary to retrieve the appropriate data from the database, the process he used and the data presented in his declaration are no more technical or foreign to the average layperson than typing a search request into Google and noting the number of results. That is, although Burtner's "expertise and use of computer software may have made him more efficient at reviewing [NBD]'s records, his review itself was within the capacity of any reasonable lay person." United States v. Hamaker, 455 F.3d 1316, 1321-22 (11th Cir. 2006). Burtner conducted no analysis, statistical or otherwise, beyond simple percentage calculations, and offered no conclusions beyond merely reporting the information contained in NBD's own database in a straightforward, easily digestible form. "Thus, the factual information collected by [Burtner] from the [results returned] database[] is information generally understood by the lay public and is not expert testimony." Dish Network, 2015 WL 4635012, at *7. Therefore, Burtner was a properly disclosed

fact witness, and NBD's motion to strike Burtner's declaration will be denied.

## C. The Barkan Declaration

NBD argues that Barkan is an expert witness because he "has no personal knowledge of the relevant database or NBD's business, but he nonetheless has attempted to draw inferences from that database regarding the ability to generate a class list here." (Def. Mem. at 8). NBD also points out that Barkan "specializes in using third party search 'products' to locate class members." Id. Plaintiffs contend that Barkan is not an expert witness because his declaration is based on his personal knowledge of the database, and Barkan did nothing more than "illuminate how the use of the information in Defendant's database, in conjunction with publically available skip tracing products, would yield reliable information about individual class members." (Pl. Mem. in Opp. at 10-11). Plaintiffs are correct.

First, Barkan's particularized knowledge, gained through extensive experience in the field of class administration, is sufficient to satisfy the personal knowledge requirement of Rule 701. Barkan's opinions concerning the identifiability of the class members are based on his familiarity with tools commonly used in the field of class administration and his involvement in

a previous action brought by Plaintiff Henderson involving many of the same class members.  (Barkan Dec. ¶¶ 5-7).

Specifically, Barkan concluded that McGladrey would be able to assemble a class mailing list by sending the data contained in the Results Returned database (i.e., consumers' names and dates of birth) to a third party, who could obtain addresses based on that information.  (Barkan Dec. ¶ 6).  Barkan added that in the event of any remaining ambiguities, McGladrey could "obtain[] other personal identifiers from third parties" to conclusively determine the class members' identities.  Id. ¶ 7. Barkan also noted that, because McGladrey served as the class administrator in Henderson's action against Verifications, Inc., a customer of NBD, McGladrey is "uniquely situated" to efficiently identify those class members who were the subject of a report that NBD sold to Verifications.  Id. ¶ 5.  These conclusions reflect Barkan's "perceptions based on [his] industry experience" that he has obtained "by virtue of his position" as a director in the consulting division of McGladrey and by virtue of his prior experience as class action administrator in a related action.  Buckman, 893 F. Supp. at 561; Chapman, 209 F. App'x at 265.  Therefore, Barkan's declaration satisfies the personal knowledge requirement of Rule 701.

Second, Barkan's opinions, drawn from his involvement in other class action lawsuits, are by no means "technical" or "scientific," nor did Barkan rely on "a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 Advisory Committee's Note (2000). To the contrary, the content of Barkan's declaration is well within the grasp of the average layperson; the concept of using someone's name to locate an address is no more specialized or foreign than using a phone book. The fact that a third party facilitates this procedure in the context of class administration does not render the process "technical" or "scientific." (Barkan Dec. ¶¶ 6-7). Even more plainly, Barkan's statement that his firm could use a class list obtained through a previous lawsuit, brought against a customer of NBD and involving many of the same background checks that are at issue in this action, to identify some of the class members is simply common sense. (Barkan Dec. ¶ 5). Therefore, Barkan's declaration satisfies the requirements for lay opinion testimony, and Barkan was properly and timely disclosed as a fact witness under Fed. R. Civ. P. 26(a)(2).

## CONCLUSION

For the foregoing reasons, Defendant's MOTION TO STRIKE DECLARATIONS OF McGLADREY, LLP (ECF No. 220) will be denied.

It is so ORDERED.

_____ /s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 27, 2016

14