IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, et al.,

     Plaintiffs,

v.                                          Civil Action No.: 3:12CV97

CORELOGIC NATIONAL
BACKGROUND DATA, LLC,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO STRIKE: (1) PLAINTIFFS' PROPOSED SUBCLASSES; AND (2) THE DECLARATIONS OF ROBERT SMITH AND MICHAEL HOLLANDER (ECF No. 294). For the reasons set forth herein, Defendant's motion will be denied.

## BACKGROUND

On July 16, 2015, Plaintiffs Tyrone Henderson ("Henderson") and James Hines ("Hines") filed a second amended class action complaint on behalf of themselves and all others similarly situated, alleging that Defendant National Background Data, LLC ("NBD") had violated the Fair Credit Reporting Act ("FCRA"). (Second Amended Complaint ("SAC"), ECF No. 189). The SAC presents two claims under the FCRA. Count One alleges, on behalf of the putative nationwide class, that NBD violated the

FCRA by failing to send notices to consumers and to "maintain strict procedures" to ensure that the criminal records it provided to its customers were "complete and up to date," in violation of 15 U.S.C § 1681k(a). Count Two, an individual claim on behalf of Henderson and Hines, alleges that NBD failed to use reasonable procedures to assure maximum accuracy of its reports, in violation of U.S.C. § 1681e(b).

On August 25, 2015, Plaintiffs filed a renewed motion for class certification, seeking to certify the following class:

> All natural persons residing in the United States who (a) were the subject of a report sold by NBD to Verifications, ADP or HR Plus, (b) where NBD's "Results Returned" database indicates that it was furnished for an employment purpose, (c) where NBD's "Results Returned" database showed that the report contained at least one adverse criminal record "hit," (d) within five years next preceding the filing of this action and during its pendency.

(ECF No. 196). The Court heard oral argument on that motion on April 18, 2016. At the hearing, the Court expressed concerns that the class definition was overly broad and was not adequately tethered to the element of "incompleteness" that Plaintiffs are required to prove to succeed on their § 1681k claim. See Transcript of Apr. 18, 2016 Hearing ("Hrg. Tr.," ECF No. 279). Therefore, the Court denied Plaintiffs' motion without prejudice and ordered the parties to rebrief the class

certification issues, mindful of the Court's concerns expressed at the hearing. (ECF No. 275).

In accordance with that Order, Plaintiffs filed a third motion for class certification on May 9, 2016. In their memorandum in support of that motion, Plaintiffs argue that the Court should certify the following class:

> All natural persons residing in the United States (a) who were the subject of a report sold by NBD to Verifications, ADP or HR Plus, (b) where NBD's Results Returned database indicates that it was furnished for an employment purpose (Code 6), (c) where NBD's Results Returned database showed that the report contained at least one adverse criminal record "Hit," (d) within five years next preceding the filing of this action and during its pendency...[excluding] any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

(ECF No. 282).

Plaintiffs also contend that, should the Court find that the foregoing class does not meet the requirements of Fed. R. Civ. P. 23, the Court should certify one or more of Plaintiffs' three proposed subclasses, defined as follows:

> SUBCLASS 1: (i) NBD's Results Returned database shows a criminal record hit from a Virginia General District Court; (ii) NBD did not return a SSN to its customers; and (iii) the computer database of the Executive Secretary of the Supreme Court of Virginia contains a SSN or Drivers License number associated with that criminal record.

3

> SUBCLASS 2: (i) NBD's Results Returned database shows a criminal record hit from a [Pennsylvania] General District Court; (ii) NBD did not return a SSN to its customers; and (iii) the computer database of the Pennsylvania Administrative Office of Pennsylvania Courts (AOPC) contains a SSN associated with that criminal record.

> SUBCLASS 3: (i) NBD's Results Returned database show [sic] a criminal record hit from a state Sex Offender Registry; (ii) where the age and/or date of birth provided for that consumer by Verifications, ADP or HR Plus did not match the age and/or date of birth contained in that State's publically accessible Sex Offender Registry.

Id.

In support of their first and second proposed subclasses, Plaintiffs have offered the declarations of Robert Smith ("Smith") and Michael Hollander ("Hollander"), respectively. Smith is an employee in the Office of the Executive Secretary of the Supreme Court of Virginia. (ECF No. 282-29 ¶ 2). In his declaration, Smith explains that, based on his review of a sample of General District Court records, most of the records contain Social Security Numbers ("SSNs") and/or operator's license numbers. Id. ¶¶ 4-5. Hollander is a staff attorney at Community Legal Services, Inc., a free legal services program based in Pennsylvania. (ECF No. 282-31, ¶¶ 2-3). Hollander's declaration briefly discusses the operation of the records database maintained by the Administrative Office of Pennsylvania

4

Courts and describes the procedures for accessing that database. Id. ¶¶ 7-10.

Pursuant to Fed. R. Civ. P. 37(c), NBD has filed a motion to strike Plaintiffs' proposed subclasses and the Smith and Hollander declarations offered in support thereof. First, NBD argues that Plaintiffs' proposed subclasses must be stricken because Plaintiffs' "belated disclosure" of the subclasses was a "complete surprise" and "Plaintiffs had never mentioned the use of any third-party governmental databases to try and achieve class certification in this case, let alone databases that were specific to Virginia, Pennsylvania, or state sex offender websites." (Defendant's Memorandum in Support of Motion to Strike: (1) Plaintiffs' Proposed Subclasses; and (2) the Declarations of Robert Smith and Michael Hollander ("Def. Mem.," ECF No. 295) at 5). NBD argues that those subclasses represent a completely new legal theory against which NBD is unprepared to defend. Id. Moreover, NBD contends, Plaintiffs are bound by the class definition alleged in their Complaint, and cannot demonstrate good cause to amend the Complaint. Id. at 11. Therefore, NBD concludes, the Court should not consider the proposed subclasses in deciding the motion for class certification.

Second, NBD argues that the Smith and Hollander declarations should be excluded because Plaintiffs did not

disclose these witnesses as required by Fed. R. Civ. P. 26 before attaching the declarations in support of their motion for class certification.   Id. at 5.   NBD also argues that both declarations are irrelevant because the declarations do not show that SSNs were "publically available" in either database, and therefore have no relevance to the analysis required by § 1681k(a), which pertains only to "public records." Id. at 9-10.

For the following reasons, it is appropriate for the Court to consider Plaintiffs' proposed subclasses, and NBD's motion will be denied as to them.   And, because Smith and Hollander were not disclosed as required by Fed. R. Civ. P. 26, it is appropriate to allow NBD an opportunity to conduct discovery respecting the topics therein presented, and to require briefing on certification of the three subclasses.

DISCUSSION

Both facets of NBD's motion proceed under Fed. R. Civ. P. 37(c) which provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c).   That rule also offers alternative sanctions, discussed in more detail below, that may be imposed in addition to or instead of the sanction of exclusion at the

6

court's discretion. The process of determining whether to impose sanctions such as those requested by NBD involves three steps:

> (1) determining that a violation of a discovery order or one of the Federal Rules of Civil Procedure occurred; (2) determining whether that violation was harmless and substantially justified, by reference to Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003); and (3) fitting a sanction to the violation, if one is found.

Samsung Elecs. Co., Ltd. v. Nvidia Corp., 314 F.R.D. 190, 195-96 (E.D. Va. 2016). This framework is applied to each part of NBD's motion in turn.

## 1. Plaintiffs' Proposed Subclasses

For reasons set out in a separate Memorandum Opinion, the Court has declined to certify the proposed nationwide class. But, as noted above, Plaintiffs have proposed subclasses in their most recent Renewed Motion for Class Certification that represent subsets of the proposed nationwide class that will not be certified. NBD contends that the subclasses are impermissible because: (1) those subclasses represent a new legal theory that should have been disclosed in discovery; and (2) Plaintiffs are "bound by" the class definition in the SAC. Neither of these arguments has merit.

First, Plaintiffs did not violate Fed. R. Civ. P. 26 by failing to disclose the proposed subclasses. NBD's theory as to

7

the discovery requests in response to which Plaintiffs should have disclosed the proposed subclasses is not entirely clear; however, to the extent that NBD actually is arguing that Plaintiffs should have disclosed that they intended to rely on state court databases in support of their class certification motion, that argument is unavailing.    Plaintiffs have, throughout the course of this litigation, sought to show that NBD's reports are systemically incomplete because NBD fails to provide its customers with all of the identifying information available in the original court records.    And, as evidenced by Plaintiffs' interrogatory responses, attached as an exhibit to NBD's own brief, Plaintiffs have persistently argued that NBD could satisfy its obligations under § 1681k(a)(2) by "contemporaneously verify[ing] courthouse records."    (Def. Mem. Ex. 1 at 5).    The fact that Plaintiffs now rely on databases maintained by the court systems from which Plaintiffs contend that NBD should have obtained verification of *its* records does not transform the proposed sub-classes into a new legal theory of which NBD lacked notice.

Moreover, NBD cannot credibly claim either prejudice or surprise as a result of the proposed subclasses.    Given the Court's ruling on summary judgment and the extensive discussion at the April 18, 2016 hearing concerning ascertainability and completeness, it is unremarkable that Plaintiffs sought to

define the class by reference to objective criteria, i.e., specific items of identifying information. Nor can it come as a surprise that Plaintiffs seek, in two of their subclass definitions, to tether the concept of incompleteness to records lacking SSNs, because Plaintiffs have touted SSNs as the sine qua non of completeness throughout the course of this action.[1] Thus, connecting the subclass definitions to a specific type of missing information is not, as NBD would have it, "radically different" from what was pled in the SAC or the theories that Plaintiffs have previously pressed.   (Def. Mem. at 11).   In addition, Plaintiffs specifically raised the issue of supplementing their proposed class definition through subclasses such as Subclass 1 at the April 18, 2016 hearing. Hrg. Tr. at 50-53.   Finally, as NBD points out, NBD and SafeRent regularly obtain information from the very databases in which Plaintiffs seek to ground their proposed subclasses, so NBD cannot claim that these databases are entirely unfamiliar.   Therefore, NBD has not been prejudiced by the inclusion of the new proposed subclasses in Plaintiffs' motion for class certification.

---

[1] It is not true, as NBD contends, that the Court "rejected" that particular theory at the summary judgment stage.   The Court actually held only that it could not determine whether SSNs are necessary for completeness as a matter of law.   Henderson v. CoreLogic Nat'l Background Data, LLC, 2016 WL 1574048, at *12 (E.D. Va. Apr. 18, 2016).

NBD also contends that "the Court and, in turn, Plaintiffs are 'bound by the class definition provided in the complaint.'" (Def. Mem. at 11). Although some courts have required an amendment of the complaint where the plaintiffs seek to revise the class definition, many courts have held exactly the opposite: that it is inappropriate to constrain the parties to the class definition propounded in the plaintiff's pleadings, particularly in light of the "ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004); see also Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) (noting that the court is "not bound by the class definition proposed in the complaint"); Piotrowski v. Wells Fargo Bank, NA, 2015 WL 4602591 (D. Md. July 29, 2015) (observing that the "proper inquiry is whether Plaintiffs' proposed class definition results in an ascertainable and administratively feasible class and meets Rule 23 requirements, not whether it precisely tracks the allegations and class definition in the amended complaint"); Abdeljalil v. Gen. Elec. Capital Corp., 306 F.R.D. 303, 306 (S.D. Cal. 2015) (allowing the plaintiff to narrow the class definition and noting that there is no prejudice caused by "having to defend against a better pled class"); Kalow & Springut, LLP v. Commence Corp., 272 F.R.D. 397, 402 (D.N.J.

2011) (holding that "Plaintiff is not bound by the class definitions proposed in its Amended Complaint, and the Court can consider Plaintiff's revised definitions, albeit those revisions are made in its motion for class certification"). The Court finds the latter class of decisions persuasive.

First, Fed. R. Civ. P. 23(c)(1)(C) explicitly contemplates the amendment of a class certification order before final judgment. See, e.g., Milbourne v. JRK Residential Am., LLC, 2016 WL 1071571 (E.D. Va. Mar. 15, 2016) (amending class definition after certification). Where it becomes apparent that the proposed or certified class is unworkable, the Court has discretion to amend or decertify the class. Similarly, then, the Court has discretion to consider sub-classes that may improve the manageability and viability of the putative class.

Second, it would be particularly inappropriate in this case to limit Plaintiffs to the proposed class in the SAC because at the time that Plaintiffs filed the SAC and their previous motion for class certification, they lacked the benefit of the Court's rulings on summary judgment, which necessitated significantly restructuring the class proceedings, as evidenced by the fact that the Court allowed the parties to re-brief class certification with those rulings in mind. Finally, unlike in the cases cited by NBD, Plaintiffs are not attempting to offer an entirely new claim or theory of the case; rather, Plaintiffs

11

merely have attempted to refine the theory that they have espoused since the initiation of this case so as to make the proposed class more manageable.   Accordingly, the Court will consider the class definitions and proposed sub-classes set forth in Plaintiffs' certification motion without requiring any amendment of the Complaint.

## 2.   Striking the Declarations

NBD also contends that the Court must strike the declarations of Smith and Hollander, on which Plaintiffs rely in support of their proposed sub-classes, for several reasons. First, NBD asserts that Plaintiffs never disclosed either Hollander or Smith as required by Fed. R. Civ. P. 26 before filing their renewed class certification motion on May 10, 2016. (Def. Mem. at 5; Defendants' Reply Memorandum in Support of Motion to Strike:   (1) Plaintiffs' Proposed Subclasses; and (2) Declarations of Robert Smith and Michael Hollander ("Def. Reply," ECF No. 312) at 5-6).   Second, NBD contends that Smith's declaration is an attempt to summarize voluminous records that is governed by, and fails to comply with, Fed. R. Evid. 1006. (Def. Mem. at 9).   Third, NBD asserts that Hollander's declaration is inadmissible hearsay. Id. at 10.

### A.   The Existence of Violations

Fed. R. Civ. P. 26(a)(1)(A)(i) requires that a party provide to its opponent, without awaiting a discovery request,

the name of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). Also, a party must provide a copy or description of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). These initial disclosures must be made within fourteen days of the parties' first discovery planning conference. Fed. R. Civ. P. 26(a)(1)(C). In addition, Rule 26(e)(1)(A) requires that a party must supplement or correct these initial disclosures in a timely manner, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

These rules obligated Plaintiffs to disclose Smith and Hollander either within fourteen days of the parties' initial planning conference or "in a timely manner." Here, Plaintiffs have never disclosed Smith or Hollander pursuant to Fed. R. Civ. P. 26. Although NBD was made aware of Smith's and Hollander's existence by the filing of their declarations in support of Plaintiffs' class certification motion, Plaintiffs' failure to give NBD prior notice of Smith's and Hollander's key role in

13

Plaintiffs' case fails to satisfy Rule 26. Plaintiffs do not try to contend that Smith's and Hollander's disclosure was timely. Therefore, Plaintiffs' failure to have identified Smith and Hollander before May 10, 2016 constitutes a violation of Rule 26.

### B.    Harmlessness and Substantial Justification

If a party fails to identify witnesses or documents as required by Rules 26(a) and 26(e) or a court order, that party is subject to sanctions pursuant to Fed. R. Civ. P. 37(c)(1). That rule provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)    May order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)    May inform the jury of the party's failure; and
>
> (C)    May impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) provides the following by way of alternate or additional sanctions:

14

(i)     Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   Striking pleadings in whole or in part;

(iv)    Staying further proceedings until the order is obeyed;

(v)     Dismissing the action or proceeding in whole or in part;

(vi)    Rendering a default judgment against the disobedient party.

The basic purpose of these rules is to prevent "surprise and prejudice to the opposing party." Southern States, 318 F.3d at 596. It is not necessary that the nondisclosure be in "bad faith or callous disregard of the discovery rules" for the evidence to be excluded. Id. The burden is on the nondisclosing party to show harmlessness and justification. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

When assessing whether the nondisclosure was substantially justified or harmless, the court, in its broad discretion, should consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and

15

(5) the nondisclosing party's explanation for its failure to disclose the evidence." Southern States, 318 F.3d at 597. However, the court need not consider all of the factors in reaching a conclusion on harmlessness and justification. See Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2011).

Applying the Southern States factors to this case, it is clear that Plaintiffs' failure to disclose was neither harmless nor justified. First, NBD was certainly surprised by Smith's and Hollander's declarations, revealed long after the close of discovery and without any notice to NBD. Only when Plaintiffs filed the currently pending motion did it become apparent that Smith, Hollander, and the databases that they purport to describe would be critical to NBD's ability to prepare for trial and to oppose Plaintiffs' certification motion.

Plaintiffs argue that NBD "cannot credibly claim that it was surprised that the Plaintiffs offered witnesses and evidence to establish that the public records that NBD sold were incomplete." (Plaintiffs' Opposition to Defendant CoreLogic National Background Data, LLC's Motion to Strike: (1) Plaintiffs' Proposed Subclasses; and (2) the Declarations of Robert Smith and Michael Hollander ("Pl. Mem. in Opp.," ECF No. 311) at 8). In other words, Plaintiffs argue that NBD cannot be surprised by any evidence Plaintiffs choose to present that supports their theory of the case. That is simply not the

16

standard.   NBD had no reason to anticipate Smith's and Hollander's declarations, and was clearly surprised.

Second, NBD is unable to cure the surprise.   Briefing on class certification has already been completed.   NBD had no opportunity to conduct any analysis of the databases that were described by Smith and Hollander or to depose those individuals or any other representatives of the Virginia or Pennsylvania judicial systems.   Had Plaintiffs alerted NBD to their reliance on Smith and Hollander, the Court could have amended the briefing schedule to allow NBD time to formulate its opposition to Plaintiffs' new evidence and take expedited depositions of Smith and Hollander.   In fact, the Court explicitly contemplated that possibility at the previous hearing on class certification. (Hrg. Tr. at 107:3-5).   Plaintiffs instead chose to simply file the declarations without any notice to NBD.

Plaintiffs contend that NBD was able to cure the surprise because it was able to obtain a declaration from Smith after having reviewed Plaintiffs' certification motion.   (Pl. Mem. in Opp. at 9).   Although that declaration takes a step towards remedying the disadvantage that Plaintiffs' belated disclosure brought about, it is not a cure.   As noted above, NBD did not have the opportunity to depose Smith or to conduct a thorough analysis of the databases.   And, of course, NBD also did not have the opportunity to depose Hollander, and did not obtain a

17

declaration from him.    Therefore, Plaintiffs' first argument is unavailing.

Plaintiffs also argue that "had NBD met and conferred with the Plaintiffs prior to filing its motion to strike, it would have learned that Plaintiffs would not have opposed an extension of time for NBD to file its opposition brief so that it could take the expedited depositions of both Mr. Smith and Mr. Hollander." (Pl. Mem. in Opp. at 9).    That argument is also unavailing, for two reasons.    First, NBD did not have an obligation to meet and confer with Plaintiffs before filing its motion to strike because "unlike motions to compel responses to discovery requests, personal consultation is not required prior to a motion for sanctions pursuant to Rule 37(c)." Liguori v. Hansen, 2012 WL 760747, at *14 (D. Nev. Mar. 6, 2012); see also Fulmore v. Home Depot, USA, Inc., 423 F. Supp. 2d 861, 871-72 (S.D. Ind. 2006).    Second, NBD argues that the Plaintiffs' conduct is "symptomatic of a larger theme in Plaintiffs' briefing, i.e., so long as discovery can be reopened year after year, there can be no harm, regardless of the prior expense, motions practice, expert engagement, tolling applied to the absent class members, etc." (Def. Reply at 11).    That argument is a considerable overstatement given the facts in this case. Nonetheless, pointing the finger at NBD for its failures does

18

not change the fact that the cure factor of the Southern States test must be resolved in favor of NBD.

Third, because trial has not yet been set in this case, there is no disruption to the trial. Fourth, these declarations are indisputably important to the course of this litigation. Class certification, as the Court has previously noted, is "'generally the most important aspect of a class action case. If a court certifies the case to proceed as a class action, the case's dynamics change dramatically[.]'"  Milbourne v. JRK Residential Am., LLC, 2016 WL 1071564, at *8 (E.D. Va. Mar. 15, 2016) (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 7.18 (5th ed. 2013)).  Here, Smith's and Hollander's declarations have the potential to shape the decision as to whether this litigation proceeds as a class action at all and, if so, the composition of the class or classes.  Accordingly, the importance of the evidence weighs against a finding that Plaintiffs' violation was harmless.

Finally, Plaintiffs argue that they did not disclose Smith and Hollander "during the discovery period" because they did not realize that the declarations would be necessary until the Court issued its opinion on summary judgment and gave the parties direction as to further briefing at the April 18, 2016 hearing. (Pl. Mem. in Opp. at 10).  And, on that point, the Plaintiffs are correct.  Nonetheless, the proper course of action would

19

have been for Plaintiffs to alert NBD and the Court as soon as they realized that additional discovery would be necessary, rather than simply allowing NBD to find out about Plaintiffs' new witnesses through the filing of their declarations. Thus, Plaintiffs' proffered justifications are insufficient to excuse the untimely disclosure.

### C.    The Appropriate Sanction

Having determined that a violation occurred, and that the violation was neither harmless nor substantially justified, it is necessary to determine what sanction to impose. "Although Fed. R. Civ. P. 37(c)(1) is often read as an automatic preclusion sanction against a noncomplying party that prevents that party from offering the nondisclosed evidence in support of a motion or at trial, the second sentence of the rule permits 'other appropriate sanctions' in addition to or in lieu of the automatic preclusion." Samsung, 314 F.R.D. at 200 (citing Rambus, Inc. v. Infineon Techs. AG, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001)). District courts enjoy broad discretion to select an appropriate remedy in light of the totality of the circumstances. Southern States, 318 F.3d at 593.

In applying that discretion, courts within the Fourth Circuit consider: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that non-compliance caused the adversary; (3) the need for deterrence of the

particular sort of noncompliance; and (4) whether less drastic sanctions would have been effective." Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc., 61 F. App'x 822, 830 (4th Cir. 2003) (quoting Anderson v. Found. For Advancement, Educ. And Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)). Applying those factors to the circumstances of this case, the Court finds that the appropriate remedy is to allow the Smith and Hollander declarations to be considered in the class certification analysis after allowing a limited reopening of discovery to focus on the topics presented in those declarations and to require rebriefing on class certification of the proposed three narrowed subclasses.

First, there is no indication that Plaintiffs have acted in bad faith. However, rendering a decision on class certification without allowing NBD time to adequately analyze, depose, and supplement on the previously undisclosed information would constitute significant prejudice. Not only must NBD be allowed to depose Smith and Hollander, if it wishes to do so, but NBD must have time to examine and analyze the databases that their declarations purport to summarize.

Furthermore, sanctions must be "sufficient not only to remedy the harm caused, but to provide a sufficient deterrent such that present and future parties will be forewarned from acting similarly." Beach Mart, Inc. v. L&L Wings, Inc., 302

F.R.D. 396, 414 (E.D.N.C. 2014).  As the Court recently noted, "deterrence is...necessary in the broader sense because nondisclosure, left untreated, gives rise to nasty snarls that eat up the parties' time, the Court's time, and the jury's time, in contravention of the rule that cases should be resolved in a just, speedy, and inexpensive manner.  Fed. R. Civ. P. 1." Samsung, 314 F.R.D. at 201.  In this case, a tailored sanction (reopening discovery and briefing) and requiring the reasonable fees incurred by NBD to be paid by Plaintiffs' counsel will deter Plaintiffs' counsel from engaging in such conduct in the future.[2]

This alternative sanction will allow the issue of class certification to be tailored to the evidence and to the dimensions of the case that have been defined by the rulings on summary judgment and class certification.  Further, NBD is not without fault in the matter because the need to revise the classes is in large measure necessitated by the positions taken by NBD.

Complete rejection of the evidence from Smith and Hollander would be an excessive sanction given that the evidence was, in large part, made necessary by NBD's positions and the decision on summary judgment.  Likewise, default judgment would be

---

[2]  The Court will require a detailed plan for the limited discovery to be allowed and will thus be able to constrain fees to a reasonable amount.

excessive for there is evidence that the three proposed subclasses likely should have been the classes proposed at the outset and appear to have merit. The sanctions available under Fed. R. Civ. P. 37(b)(2)(A)(i), (iii), (iv) and (v) simply do not fit this case and, in any event, are not pressed by NBD.[3]

**CONCLUSION**

For the foregoing reasons, DEFENDANT'S MOTION TO STRIKE: (1) PLAINTIFFS' PROPOSED SUBCLASSES; AND (2) THE DECLARATIONS OF ROBERT SMITH AND MICHAEL HOLLANDER (ECF No. 294) will be denied. Counsel shall immediately develop and submit for review a plan for reopening limited discovery relating to the subclasses proposed in PLAINTIFFS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION (ECF No. 282) and additional briefing and shall submit their plan to the Court by September 11, 2016.

It is so ORDERED.

/s/   REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September / , 2016

---

[3] Given that discovery will be reopened, any objection to Hollander's deposition as hearsay can be cured and a revised affidavit can be submitted. The objection to Smith's declaration as offensive of Fed. R. Evid. 1006 is simply not well-taken and is rejected.